14-1445(L); 14-1309; 14-632
<u>In re Facebook, Inc. IPO Derivative Litig.</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: April 27, 2015     Decided: July 24, 2015)

Docket Nos. 14-1445, 14-1784, 14-1788, 14-1309, 14-632

- - - - - - - - - - - - - - - - - - - - - - - - - - x

In re: Facebook, Inc., Initial Public
Offering Derivative Litigation[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - x

Before:       JACOBS, POOLER, and HALL, <u>Circuit Judges</u>.

Plaintiffs appeal from a judgment of the United States District Court for the

Southern District of New York (Sweet, <u>J.</u>) dismissing their putative shareholder

derivative actions brought against nominal defendant, Facebook, Inc., its

directors, and lead underwriters.  When confronted with a difficult or novel

question of subject matter jurisdiction, a court may sometimes dismiss the case

on a threshold, non-merits issue.  We hold that such a ground in a derivative

_____

[*] The Clerk of Court is respectfully directed to amend the official caption as set
forth above.

action under Rule 23.1 is lack of contemporaneous share ownership. We further

conclude that here, all of the putative derivative plaintiffs failed to satisfy this

pleading requirement, and that dismissal was therefore appropriate. Affirmed.

GEOFFREY M. JOHNSON, Scott+Scott LLP, Cleveland Heights, Ohio (<u>with</u> Joseph P. Guglielmo, Scott+Scott LLP, New York, New York and Thomas McKenna and Gregory M. Egleston, Gainey McKenna & Egleston, New York, New York, <u>on the brief</u>) <u>for</u> Appellant-Cross-Appellee Lidia Levy.

ANDREW S. LOVE, Robbins Geller Rudman & Dowd LLP, San Francisco, California (<u>with</u> Joseph David Daley, Robbins Geller Rudman & Dowd LLP, San Francisco, California , Samuel H. Rudman, Robbins Geller Rudman & Dowd LLP, Melville, New York, and Paul A. Fioravanti, Jr., Prickett, Jones & Elliott, P.A., Wilmington, Delaware, <u>on the brief</u>) <u>for</u> Appellants Gaye Jones and Holly McConnaughey.

BRIAN P. MURRAY, Glancy Binkow & Goldberg LLP, New York, New York (<u>with</u> Gregory B. Linkh, Glancy Binkow & Goldberg LLP, New York, New York, Mark R. Rosen, Barrack, Rodos & Bacine, Philadelphia, Pennsylvania, Fred T. Isquith, Wolf Haldenstein Adler Freeman & Herz LLP, New York, New York, and Richard S. Wayne, Strauss & Troy, Cincinnati, Ohio, <u>on the brief</u>) <u>for</u> Appellant Robert Crocitto.

2

ANDREW B. CLUBOK, Kirkland & Ellis LLP, New York, New York (with Brant W. Bishop, P.C., Kirkland & Ellis LLP, New York, New York, Susan E. Engel, Kellen S. Dwyer, Kirkland & Ellis LLP, Washington, D.C., Richard D. Bernstein, Elizabeth J. Bower, Willkie Farr & Gallagher LLP, Washington, D.C., and Tariq Mundiya, Todd G. Cosenza and Sameer Advani, Willkie Farr & Gallagher LLP, New York, New York, on the brief), for Appellee-Cross-Appellant Facebook, Inc. and Appellees Marc. L. Andreessen, Erskine B. Bowles, James W. Breyer, David A. Ebersman, Donald E. Graham, Reed Hastings, Peter A. Thiel, Mark E. Zuckerberg, Sheryl Sandberg, Cipora Herman, David Spillane, Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC and Goldman, Sachs & Co.

James P. Rouhandeh, Charles S. Duggan, Andrew Ditchfield, Davis Polk & Wardwell LLP, New York, New York, for Appellees Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC and Goldman, Sachs & Co.

DENNIS JACOBS, Circuit Judge:

These in tandem appeals arise from related suits brought in the aftermath of the initial public offering by nominal defendant Facebook, Inc. ("Facebook"), the world's largest social media company. In these putative shareholder derivative actions, plaintiffs allege that Facebook's directors breached duties owed to the company because its Registration Statement failed to disclose the

mid-quarter impact of mobile usage on the company's projected growth.

One of the putative derivative actions was filed in the Southern District of New York. A related action was filed in California state court, and removed to the Northern District of California. A third was filed in the Delaware Court of Chancery, and removed to the United States District Court for the District of Delaware. Before the putative derivative plaintiffs could litigate motions to remand to state court, the Judicial Panel on Multidistrict Litigation transferred all of the actions to the United States District Court for the Southern District of New York (Sweet, J.).

The district court dismissed all of the actions on threshold grounds, ruling that: (i) plaintiffs were not actual or equitable owners of Facebook stock at the time of the alleged wrongdoing, (ii) plaintiffs failed to adequately plead demand futility, and that (iii) the claims were unripe. Plaintiffs in the removed actions argue that the court erred in considering these bases for dismissal before adjudicating subject matter jurisdiction. The plaintiff in the action originally filed in the Southern District of New York appeals the dismissal of his action on these threshold grounds. The removed plaintiffs join, in the alternative, in these arguments.

4

Facebook urges this Court to affirm the district court in all respects, proffers additional bases to support subject matter jurisdiction as to the removed actions, and asserts a conditional cross-appeal pertaining to the district court's refusal to enforce a forum selection clause adopted before plaintiffs filed suit.

We conclude that it was not error for the district court to decide, as a threshold matter, whether plaintiffs adequately pleaded contemporaneous share ownership, as required by Federal Rule of Civil Procedure 23.1. Because none of the putative derivative plaintiffs satisfied this requirement, we affirm. We do not reach the additional bases for dismissal invoked by the district court, or advanced by Facebook.

## BACKGROUND

Facebook's May 18, 2012 initial public offering (the "IPO") was one of the largest in history. In preparation for this event--closely watched by investors, the press, and the public--Facebook filed a Form S-1 Registration Statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). The Registration Statement is a disclosure document that requires a public company to, inter alia, detail its current business model and its competition,

provide a prospectus of the planned security, provide information on the offering price and methodology for setting the price, disclose risks, and disclose material dealings between the company and its directors.[1] Several months after the filing of the Registration Statement, Facebook gave its lead underwriters (Goldman, Sachs & Co., Morgan Stanley & Co., and J.P. Morgan Securities LLC) (the "Underwriters") revenue projections for the second quarter and full year of 2012.

Facebook supplemented its Registration Statement on May 9 with a Free-Writing Prospectus, a one-page, stand-alone disclosure, which identified a trend: the number of Facebook users was increasing more rapidly than the number of advertisements. Facebook offered the view that this trend was driven, at least in part, by increased usage of Facebook on mobile devices, on which it had only an "immaterial" number of sponsored stories in users' "News Feeds," and which displayed fewer advertisements per page.[2] Compl. ¶ 38, Crocitto v. Zuckerberg,

---

[1] See Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 380-81 & n.4 (2d Cir. 2006) (discussing the Form S-1) (citing John Downes & Jordan Elliot Goodman, Dictionary of Finance and Investment Terms 470 (Barron's Financial Guides, 4th ed. 1995)).

[2] A "News Feed" is a list of continuous notifications on a user's account, which displays updates about people in that user's list of friends, as well as advertisements.

13-cv-786 (S.D.N.Y. 2014) ("Crocitto Compl.").  After the Free-Writing Prospectus was filed, Facebook called analysts at the company's Underwriters to ensure that they were aware of the filing, and to provide them with lower revenue estimates, which were 3 to 3.5 percent off of the company's earlier five billion dollar target for 2012.[3]  Id. ¶ 37.  The Underwriters updated their models based on this information and shared their revised models with certain institutional investors.

The final Registration Statement, filed on May 16, included the following disclosures:

- Facebook did "not currently directly generate any meaningful revenue" from mobile usage;

- its "revenue would be negatively affected" if it was "unable to successfully implement monetization strategies for [its] mobile users";

- its "ability to monetize" use on mobiles devices was "unproven";

---

[3] Facebook's revised projections ultimately turned out to be too conservative: the company reported second-quarter revenue of 1.184 billion dollars (near the upper end of its original projected range) and 2012 revenue of over five billion dollars (beating both its original and revised projections).

- daily mobile users were increasing more rapidly than advertisements; and,

- it believed usage of Facebook on mobile devices would continue to grow.

Registration Statement, No. 12-md-2389, Dkt. 25-5, at 5, 13, 14-15, 16, 51, 53, 57, 93, 94.

Notwithstanding these predictions and disclosures, Facebook's Registration Statement provided that, in consultation with its Underwriters, it had increased its IPO price range from between 28 to 35 dollars per share to between 34 to 38 dollars per share.

Facebook's Prospectus, issued two days later, warned that the company generated "a substantial majority" of its revenue from advertising, and that the "loss of advertisers, or reduction in spending by advertisers with Facebook, could seriously harm [its] business." Compl. ¶¶ 48, 49, Levy v. Andreessen, Civ. 514585 (Cal. Super. Ct. 2012) ("Levy Compl.").

That same day, on May 18, Facebook offered 421 million shares of common stock to the public at 38 dollars per share, thereby valuing the IPO at more than 16 billion dollars.

8

The day after, the press reported that Facebook had altered its guidance on earnings before the IPO. Plaintiffs allege that "the public never found out about" these revised numbers "until after the IPO had been priced." Crocitto Compl. ¶ 40. In the ensuing days, additional media coverage suggested that the Underwriters had cut their earnings forecasts prior to the IPO based on allegedly selective disclosures. Plaintiffs allege that when the market learned of this, the stock price was "hammered." Levy Compl. ¶ 11.

Plaintiffs, and other shareholders whose litigation is not now at issue, filed overlapping putative derivative actions in California Superior Court, Delaware Chancery Court, and the Southern District of New York. All of the derivative actions alleged that Facebook's directors breached their duties to shareholders because the Registration Statement did not include a sufficient description of the effect that increasing mobile usage was projected to have on the company's revenue growth. Several of the actions alleged an oversight theory of liability. Others alleged that three of the directors' IPO sales of Facebook stock amounted to insider trading.

Plaintiff Robert Crocitto, who filed his case in the Southern District of New York, alleged that he "beneficially purchased Facebook shares through the

9

purchase of Series 2 Membership Units of SharesPost Private Investments II, LLC." Crocitto Compl. ¶ 10. SharesPost Private Investments II, LLC ("SharesPost") is an investment vehicle, which held Facebook shares pre-IPO. The Subscription Agreement governing Crocitto's purchase of the Series 2 Membership Units ("SharesPost Units") provided: "The Subscriber acknowledges that it has no direct interest in any Facebook Securities, and that the Facebook Securities are held solely by the Company." Crocitto J.A. at 219. According to Crocitto's own complaint, "[t]he Series 2 Membership Units converted into Class B Common Stock of Facebook after the IPO." Crocitto Compl. ¶ 10. An e-mail from SharesPost, which Crocitto attached to his amended complaint, confirms that Crocitto received the shares in November 2012--six months after the IPO. Crocitto J.A. at 261.

Like Crocitto, plaintiff Gaye Jones purchased SharesPost Units; her Subscription Agreements stated that she acknowledged that she had "no direct interest in any Facebook Securities."[4] Jones J.A. at 262, 453. Also, as with Crocitto, the Subscription Agreement stated that the SharesPost "Manager in its

---

[4] The Jones action was consolidated with Holly McConnaughey's action and will be referred to collectively. See Crocitto J.A. at 81.

sole discretion shall have the right, but not the obligation to distribute" the Facebook shares. Id. at 458.

Plaintiff Lidia Levy, who originally filed her action in California, alleged that she was "an owner and holder of Facebook common stock continuously since May 18, 2012, having purchased shares in the open market the day of Facebook's IPO." Levy Compl. ¶ 18.

Facebook successfully removed the state court actions to federal courts, and asked the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer these removed actions to the United States District Court for the Southern District of New York. Plaintiffs moved to remand the actions to the state courts; Facebook, in turn, moved to dismiss. While the remand and dismissal motions were pending, the MDL Panel granted the motion to transfer. In re Facebook, Inc., IPO Sec. & Derivative Litig., 899 F. Supp. 2d 1374, 1376-77 (J.P.M.L. 2012). The MDL Panel observed that "[p]laintiffs in the removed derivative actions [could] present their pending motions for remand to state court to the transferee court." Id. at 1376.

Following the transfer, plaintiffs renewed their motions to remand, and Facebook sought dismissal of all of the related derivative actions. In granting

11

Facebook's motion to dismiss, the district court concluded that a ruling on subject matter jurisdiction would involve a "possible arduous inquiry." In re Facebook, Inc., IPO Sec. & Derivative Litig., 2013 WL 6798160, at *10 (S.D.N.Y. Dec. 23, 2013). Specifically, in parsing plaintiffs' myriad claims, the court would have had to delve into complicated issues of state law, and would have had to decide whether any of plaintiffs claims necessarily raise a federal question, in addition to issues arising under the Securities Litigation Uniform Standards Act ("SLUSA"). Id. Accordingly, it held that it had discretion to decide certain threshold grounds for dismissal without first adjudicating whether it had subject matter jurisdiction over the removed cases.

As to the allegation of stock ownership advanced by Crocitto and Jones, the district court held that ownership of SharesPost Units did not constitute ownership in Facebook, equitable or otherwise. Therefore, these plaintiffs could not pursue their claims in a derivative capacity. As to Levy, the court concluded that she too failed to plead the required contemporaneous ownership. The gravamen of Levy's complaint challenged disclosures that were made before the IPO, but she did not allege that she acquired Facebook shares before the IPO; rather, she purchased Facebook stock in the IPO.

Jones and Levy, plaintiffs in the removed actions, argue that the court

erred by deciding the motion to dismiss before adjudicating their motions to

remand for lack of subject matter jurisdiction.  Crocitto, who originally filed his

complaint in the Southern District of New York, does not contest subject matter

jurisdiction, and argues solely that dismissal was improper.  Jones and Levy join,

in the alternative, in this argument.

**DISCUSSION**

When a determination as to subject matter jurisdiction raises a difficult or

novel question, the district court has discretion to decide certain threshold bases

for dismissal without deciding whether it has subject matter jurisdiction.  See

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999).  We review such an

exercise of discretion for abuse of discretion.  See id.  Whether contemporaneous

stock ownership is the type of threshold question that can be resolved before

adjudicating a motion to remand for lack of subject matter jurisdiction is a

question of law that this Court reviews de novo.  See Scalisi v. Fund Asset Mgmt.,

L.P., 380 F.3d 133, 137 (2d Cir. 2004) ("[W]here a challenge is made to the legal

precepts applied by the district court in making a discretionary determination,

13

plenary review of the district court's choice and interpretation of those legal precepts is appropriate.").

Rule 23.1 provides that, in a derivative action, the complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share of membership later devolved on it by operation of law." Fed. R. Civ. P. 23.1(b)(1). We review de novo the district court's dismissal on the ground that plaintiffs lacked standing to proceed in a derivative capacity because they were not contemporaneous stock owners for purposes of Rule 23.1. See In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 297-99 (2d Cir. 2003).[5]

**I**

The Supreme Court has made clear that a court should not assume "hypothetical jurisdiction" over a case for purposes of adjudicating the merits when its jurisdiction is "in doubt," because to do so would "carr[y] the courts

---

[5] We do not consider the additional grounds for dismissal (demand futility and ripeness) invoked by the district court. See, e.g., Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., 493 F.3d 283, 285 (2d Cir. 2007) (declining to reach alternative grounds for affirmance relied on district court when not necessary to disposition).

14

beyond the bounds of authorized judicial action." Steel Co. v. Citizens for a Better Envt., 523 U.S. 83, 101, 94 (1998). At the same time, the Court has recognized that "in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy," Ruhrgas, 526 U.S. at 578, and a court need not make a difficult determination as to subject matter jurisdiction when another clear threshold defect would warrant "denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation marks omitted) (holding that a district court has discretion to grant a defendant's forum non conveniens motion to transfer before disposing of any other threshold challenges).

"It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." Ruhrgas, 526 U.S. at 585. Thus, "district courts do not overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendant jurisdiction, or abstain under Younger [v. Harris, 401 U.S. 37 (1971)] . . . without deciding whether the parties present a case or controversy." Ruhrgas, 526 U.S. at 585 (internal citations omitted). And, under

15

certain circumstances, questions of "statutory standing . . . may properly be treated before Article III standing." Ortiz v. Fireboard Corp., 527 U.S. 815, 831 (1999). The district court's dismissal of all three actions was not based on any deficiency as to the merits of the allegations pleaded; rather it was based, inter alia, on lack of standing to proceed in a derivative capacity because plaintiffs were not contemporaneous stock owners. That procedure did not run afoul of the ordinary rule that an "Article III court must be sure of its own jurisdiction before getting to the merits."[6] Id.

A derivative action is "an exception to the normal rule that the proper party to bring a suit on behalf of a corporation is the corporation itself, acting through its directors or a majority of its shareholders." Halebian v. Berv, 590 F.3d 195, 205 n.6 (2d Cir. 2009) (internal quotation marks omitted). Failure to satisfy the contemporaneous ownership requirement of Rule 23.1 does not, of

---

[6] True, in ruling on a threshold question, a court might need to engage in analysis that "involve[s] a brush with factual and legal issues of the underlying dispute." Sinochem, 549 U.S. at 433 (internal quotation marks omitted). But that is no bar to resolving the case on threshold, non-merits grounds. Id. ("[A] court may need to identify the claims presented and the evidence relevant to adjudicating those issues to intelligently rule on a forum non conveniens motion [but] . . . . [r]esolving a forum non conveniens motion does not entail any assumption by the court of substantive law declaring power." (internal quotation marks omitted)).

course, raise a jurisdictional issue under Article III. Rather, it means that the putative derivative plaintiff does not have standing to represent the interests of the nominal defendant in a derivative capacity. See, e.g., Berni v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642, 646 (2d Cir. 1988) (ruling former shareholders lacked standing to pursue a derivative action). And, the Supreme Court has already recognized that a prudential standing question, analogous to the derivative standing question presented here, is the type of threshold inquiry a court may make before engaging in a jurisdictional analysis. See Kowalsi v. Tesmer, 543 U.S. 125, 129 (2004) (assuming Article III standing to "address the alternative threshold question whether" attorneys had third-party standing); see also Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005) ("[T]he prudential standing doctrine[] represents the sort of threshold question we have recognized may be resolved before addressing jurisdiction." (internal quotation marks omitted)).

Another consideration counsels in favor of our conclusion that the district court properly "bypass[ed]," Sinochem, 549 U.S. at 432, the jurisdictional inquiry to dismiss the case for failure to plead contemporaneous stock ownership. The complicated questions of subject matter jurisdiction arise *in this case* only if plaintiffs may properly proceed in a derivative capacity.

17

Supreme Court precedent in the class certification context suggests that if a threshold, non-merits basis for dismissal is "logically antecedent" to the adjudication of an alleged jurisdictional defect, the court is not required to decide the jurisdictional question. Specifically, the Court explained that the "class certification issues" could "properly be treated before Article III standing." Ortiz, 527 U.S. at 831 (internal quotation marks omitted); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612 (1997) ("The Third Circuit declined to reach [questions of subject matter jurisdiction] because they would not exist but for the class-action certification. We agree that the class certification issues are dispositive; because their resolution here is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first." (internal citations, alterations, and quotation marks omitted)).

As noted, Federal Rule of Civil Procedure 23.1 requires that the plaintiff in a derivative action demonstrate possession of an ownership interest in the company it seeks to represent that is contemporaneous with the conduct for which it seeks recovery. Fed. R. Civ. P. 23.1(b)(1). The rule thus ensures that the plaintiff is "a proper party to assert claims on behalf of the corporation." Lewis v. S.L. & E., Inc., 629 F.2d 764, 768 n.10 (2d Cir. 1980); see also In re Bank of N.Y.

18

Derivative Litig., 320 F.3d at 297 ("The main purpose of this so-called contemporaneous ownership rule is to prevent courts from being used to litigate purchased grievances." (internal quotation marks and alterations omitted)); Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir. 1983) ("[T]he continuous ownership requirement stems from the equitable nature of derivative litigation which allows a shareholder to step into the corporation's shoes." (internal quotation marks omitted)).

Unlike in the cases the Supreme Court considered in the Rule 23 context, the posture of this case does not "*create* the jurisdictional issue." Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 n.6 (5th Cir. 2002) (emphasis added). But, because there is "no mandatory sequencing" of threshold, non-merits inquiries ("[i]n appropriate circumstances"), it is a proper exercise of judicial power--and good craft--to decide the contemporaneous share ownership question first. Sinochem, 549 U.S. at 431 (internal quotation marks omitted).

This is so because the derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). If plaintiffs cannot properly

act in a derivative capacity, the suit would not exist (at least not as brought by these plaintiffs).[7] Cf. Potter v. Hughes, 546 F.3d 1051, 1055 (9th Cir. 2008) (recognizing that "there are non-constitutional grounds on which we may dismiss a suit before considering the existence of federal subject matter jurisdiction" and concluding that the court could dismiss for failure to satisfy the demand pleading requirement of Rule 23.1 before addressing subject matter jurisdiction). And, a determination as to whether contemporaneous stock ownership has been adequately pleaded does not bear on the underlying merits of a plaintiff;'s claim; a derivative plaintiff who has not satisfied this requirement is no proper party, whatever the merits of the underlying claims.

The contemporaneous stock ownership rule is thus a procedural requirement which, in effect, denies a putative derivative plaintiff standing to challenge wrongdoing that predated the time the plaintiff became a shareholder. See In re Bank of N.Y. Derivative Litig., 320 F.3d at 297 ("[A] plaintiff does not have standing to bring a derivative suit unless the plaintiff was a shareholder . . .

---

[7] A class action complaint filed by investors, in a non-derivative capacity, which raises many similar allegations stemming from the same alleged conduct, is pending before the district court. We express no view on the merits of that action. See In re Facebook, Inc. IPO Sec. & Derivative Litig., 986 F. Supp. 2d 487 (S.D.N.Y. 2013).

at the time of the transaction of which the plaintiff complains." (internal quotation marks omitted)); see also Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 735-36 (3d Cir. 1970) ("Standing is justified only by this proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire qua stockholder of the corporation which is the real party in interest."). Absent derivative standing, there is no derivative case, and no need to proceed to a jurisdictional inquiry, which is "vital only if the court proposes to issue a judgment on the merits." Sinochem, 549 U.S. at 431 (internal quotation marks omitted).

Accordingly, we affirm the district court's ruling that the contemporaneous stock ownership requirement of Rule 23.1 may properly be considered and decided as a threshold matter before a difficult or novel question of subject matter jurisdiction.

## II

"In the mine run of cases, jurisdiction will involve no arduous inquiry and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose of those issues first."

Sinochem, 549 U.S. at 436 (internal quotation marks and alterations omitted). But, this is not a mine run case, and the district court committed no abuse of discretion in concluding that the dispositive, threshold standing question could be resolved first: the subject matter jurisdiction questions were complex, and judicial economy favored considering the related derivative actions together. See Ruhrgas, 526 U.S. at 588 ("Where, as here, . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.").

Here, the district court identified several potentially "arduous" inquiries that would have to be made in order to decide plaintiffs' motion to remand for lack of subject matter jurisdiction--including whether a federal question is necessarily presented by plaintiffs' claims, as well as complicated questions as to the proper interpretation of SLUSA.[8] In re Facebook, Inc., IPO Sec. & Derivative

---

[8] Federal courts may exercise jurisdiction "over a 'special and small' category of . . . state claims that present significant, disputed issues of federal law." NASDAQ OMX Grp., Inc. v. UBS Secs., LLC, 770 F.3d 1010, 1019 (2d Cir. 2014) (quoting Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013)). But, "delineating the parameters of federal jurisdiction in such circumstances has presented a constant

22

Litig., 2013 WL 6798160, at *10.  In addition, the district court concluded that,

because subject matter jurisdiction was not at issue in the Crocitto action,

"[a]voiding . . . inefficiency and inconsistency . . . warrant[ed] the consideration

of the justiciability issues before the removal issues."  Id. at *11 (internal

quotation marks omitted).  The district court therefore "did not use the

pretermission of the jurisdictional question as a device for reaching a question of

law that otherwise would have gone unaddressed."  Steel Co., 523 U.S. at 98.

Rather, it recognized that "[j]udicial economy [would be] disserved by" an

onerous inquiry into subject matter jurisdiction in the removed actions,

Sinochem, 549 U.S. at 435, given that dismissal on the alternative threshold, non-

---

challenge."  Id.  As to SLUSA, which provides for the removal and dismissal of a "covered" class action involving "covered securities" that are filed in state court, invoke state law, and allege securities fraud, Romano v. Kazacos, 609 F.3d 512, 517-18 (2d Cir. 2010), the novel question would be whether the exception for "exclusively derivative action[s]," 15 U.S.C. § 78bb(f)(5)(C), applies.  Facebook argued that it does not because plaintiffs allege discriminatory disclosures that impacted only some shareholders.  But see LaSala v. Bank of Cyprus Pub. Co., 510 F. Supp. 2d 246, 269 (S.D.N.Y. 2007) ("SLUSA's definition of a covered class action does not concern itself with the nature of the claim being advanced but rather with the nature of the persons or entities on whose behalf damages are sought.").  To rule on the impact of SLUSA, the district court also would have had to undertake a claim-by-claim analysis.  See id. at 274 & n.10 (observing that in this circuit SLUSA preempts claims not entire actions, recognizing a circuit split on the question, and citing cases).

23

merits issue of contemporaneous share ownership would be "foreordained" by its ruling in the Crocitto action--a "companion case" in which subject matter jurisdiction was firmly established, see Steel Co., 523 U.S. at 98 (emphasis omitted) (distinguishing Norton v. Matthews, 427 U.S. 524 (1976)).

### III

To invoke derivative standing, all plaintiffs were required to allege facts adequately suggesting that they owned Facebook stock "throughout the course of the activities that constitute the primary basis of the complaint[s]." In re Bank of N.Y. Derivative Litig., 320 F.3d at 299. "[A] proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired." Id. at 298. Since none of the putative derivative plaintiffs satisfied this requirement, dismissal was proper.

### A

Plaintiffs Crocitto and Jones argue that simply employing the language of the rule in their complaints--which they maintain they did--satisfies the contemporaneous ownership requirement of Rule 23.1. Crocitto alleges that he "has continuously held his ownership interests in Facebook since the time of [his]

purchases" of SharesPost Units, "up to and continuing through the time of the efforts culminating in the IPO."  Crocitto J.A. at 146.  Jones' complaint alleges that she "is a stockholder of [Facebook] and was a stockholder during the misconduct alleged [in her complaint] and has been such continuously since then."  Jones J.A. at 211.  She subsequently clarified that, like Crocitto, she maintains she was a stockholder because, prior to the IPO, she purchased SharesPost Units.  Id. at 262.

A formulaic recitation of the derivative standing requirements will not suffice.  Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks omitted)).  We are "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  Faber v. Met. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

Crocitto and Jones purchased SharesPost Units, and acknowledged that they held no direct interest in Facebook stock until well after the IPO.  Crocitto J.A. at 219; Jones J.A. at 262, 453.  They do not argue on appeal that they became stockholders "by operation of law."  Fed. R. Civ. P. 23.1(b)(1).  And even if they did advance such an argument, we would reject it: plaintiffs became stockholders

25

"not by operation of law but by contract." Stephenson v. Landegger, 464 F.2d

133, 135 (2d Cir. 1972) (per curiam). Moreover, SharesPost was under no

obligation to distribute Facebook stock to plaintiffs; rather, any post-IPO

distribution would be made "according to the discretion of [SharesPost]," and the

investment vehicle had "the option to divest its held Facebook stock." Crocitto

J.A. at 196.

Nor did plaintiffs' SharesPost Units make them equitable owners of

Facebook stock for purposes of Rule 23.1 standing. "Agreeing to purchase stock

does not make one a stockholder, especially if the stock will not even be issued

until the consummation of the challenged series of actions." In re Nine Sys.

Corp. S'holders Litig., 2013 WL 771897, at *8 (Del. Ch. Feb. 28, 2013) (rejecting

direct shareholder action asserting "equitable ownership" based on agreement to

purchase stock).

Accordingly, Crocitto and Jones failed to make an adequate allegation of

share ownership through the pre-IPO period of alleged misconduct, and they

lacked standing to proceed in a derivative capacity. See Smith v. Stevens, 957 F.

Supp. 2d 466, 469 (S.D.N.Y. 2013) (concluding that "a mere allegation of

ownership" will not suffice).

26

**B**

Levy admits that she purchased shares in the public market on the day of Facebook's IPO, but contends that she has demonstrated contemporaneous ownership because, although some of the alleged wrongs occurred before the IPO, they were part of a "continuing wrong." Rule 23.1 requires that a plaintiff be a shareholder "at the time of the transaction complained of." Fed. R. Civ. P. 23.1(b)(1). We have "decline[d] to adopt the expansive definition of the term 'transaction' that is inherent in the continuing wrong doctrine." In re Bank of N.Y. Derivative Litig., 320 F.3d at 298. Instead, we have held that "in order to invoke derivative standing . . . a plaintiff must have owned stock in the corporation *throughout* the course of the activities that constitute the *primary basis* of the complaint." Id.

Levy cannot satisfy this standard. The primary basis of Levy's complaint is that Facebook's directors allowed the company to violate the securities laws by filing a Registration Statement that omitted material, nonpublic information and that certain directors illegally traded on that information. The challenged disclosures, however, were made prior to the IPO and appeared in the Prospectus, which was declared effective by the SEC before Levy acquired her

27

shares. Since the core activity complained of thus predated Levy's acquisition of Facebook stock, she is not an appropriate party to assert the derivative claims put forward in this case.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.