VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-00293



Ellen Pomeroy and Salvatore Iannuzzi,
individually and derivatively on behalf of nominal defendants
The Woodstock Foundation, Inc. and WRC Holdings, LLC
    Plaintiffs

v.

James Sligar, Michael Nolan, John Hallowell, Douglas Horne,
David Simmons, Gail Waddell, and Angela Ardolic
    Defendants

and

The Woodstock Foundation, Inc. and WRC Holdings, LLC
    Nominal Defendants

## Decision on Pending Motions

In 2022, the trustees of the Woodstock Foundation became aware of a number of issues within the organization, including gender discrimination, racial discrimination, sexual-orientation discrimination, sexual harassment, employee compensation complaints, and conflicts of interest between supervisors and staff. Plaintiffs Ellen Pomeroy and Salvatore Iannuzzi were trustees at the time, and they became involved in serious disagreements with the other trustees about how the board should respond to these issues. Eventually, according to plaintiffs, the other board members took a series of actions meant to remove plaintiffs from their positions as trustees: (1) at a "special meeting" on November 11, 2022, the other directors suspended Mr. Iannuzzi from acting as a trustee and demoted Ms. Pomeroy from her position as chair of the board, (2) at a "special meeting" on November 23, 2022, the other directors suspended Ms. Pomeroy from acting as a trustee, and (3) at an "annual meeting" on January 27, 2023, the other directors elected a new slate of trustees, which did not include plaintiffs.

Plaintiffs filed this lawsuit one week before the January 27th meeting. In their initial complaint, plaintiffs alleged that they were trustees of the foundation and another related nonprofit organization, and that the November 11th and November 23rd actions purporting to limit their authority were *ultra vires*. See *Pomeroy v. Sligar*, No. 23-CV-00293, Verified Complaint at ¶¶ 3–4, 23, & 87–116 (Vt. Super. Ct. Jan. 20, 2023). Plaintiffs asserted some direct claims, and also some derivative claims alleging that the other directors breached fiduciary duties they owed to the nonprofit organizations.

Since then, plaintiffs have filed two amended complaints, and have proposed a third. Plaintiffs now allege that all three board actions described above, including the January 2023 "annual meeting" election, were *ultra vires*. In other words, in each of the amended complaints, plaintiffs have alleged that the board actions described above were ineffective, that the boards have been improperly constituted since then, and that plaintiffs are still trustees of both nonprofit organizations. See *Pomeroy v. Sligar*, No. 23-CV-00293, Verified First Amended Complaint at ¶¶ 98–150 & 170–71 (Vt. Super. Ct. Feb. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Verified Second Amended Complaint at ¶¶ 98–151 & 171–72 (Vt. Super. Ct. Sept. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Proposed Verified Third Amended Complaint at ¶¶ 98–151 & 179–80 (Vt. Super. Ct. May 8, 2024). Furthermore, in each of the amended complaints, plaintiffs have expressly alleged that their standing to bring derivative claims on behalf of the nonprofit organizations exists because they are still trustees of both organizations. See *Pomeroy v. Sligar*, No. 23-CV-00293, Verified First Amended Complaint at ¶¶ 3–4 & 23 (Vt. Super. Ct. Feb. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Verified Second Amended Complaint at ¶¶ 3–4 & 23 (Vt. Super. Ct. Sept. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Proposed Verified Third Amended Complaint at ¶¶ 3–4 & 23 (Vt. Super. Ct. May 8, 2024). Additional derivative claims have also been asserted.

In a prior motion, defendants argued that the derivative claims should be dismissed because plaintiffs are no longer trustees of the nonprofit organizations. In denying the motion, the court focused upon a legal problem with a precedent cited by defendants (an intermediate appellate decision from California that had been subsequently reversed by the state supreme court). See *Pomeroy v. Sligar*, No. 23-CV-00293, Entry Regarding Motion (Vt. Super. Ct. Dec. 7, 2023) (Corbett, J.). A better rationale would have described plaintiffs' allegations that they are still trustees of the nonprofit organizations, and explained that the applicable procedural standard required the court to assume the truth of those allegations when evaluating the motion to dismiss, e.g., *Wool v. Office of Professional Regulation*, 2020 VT 44, ¶ 11, 212 Vt. 305; *Severson v. City of Burlington*, 2019 VT 41, ¶ 9, 210 Vt. 365. In other words, to the extent that defendants sought dismissal of the derivative claims on the ground that plaintiffs are no longer trustees of the nonprofit organizations, the court was required to accept as true the contrary allegations in the complaint: that plaintiffs are still trustees, and that the actions that removed them from the board (or that resulted in their electoral replacement) were without authority and therefore ineffective.

The same procedural assumption applies to other issues currently presented by the lawsuit. For example, defendants have filed a motion to stay discovery in order to facilitate the work of a "special litigation committee." The basic idea is that derivative actions belong to the corporation (rather than to the individual shareholders or directors who initiated the action), *Bovee v. Lyndonville Savings Bank & Trust Co.*, 174 Vt. 507, 508 (2002), and so a corporation must normally make a decision about whether or not to pursue the claims that are being proposed by the plaintiffs, taking into account all of the "legal, ethical, commercial, promotional, public relations, fiscal, and other" considerations that go into such a decision, including the merits of the claims, the damages allegedly sustained, the anticipated costs of discovery and trial, and the disruption that may be caused to normal operations. *Auerbach v. Bennett*, 393 N.E.2d 994, 1002 (N.Y. 1979). A corporate board may decide for any number of reasons that a claim is not worth pursuing even if it has merit, and courts typically defer to these decisions, so long as they are informed decisions that are made in good faith by disinterested directors. *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003).

Here, however, the proposed claims are brought against other current directors, and it would be a conflict of interest for those directors to vote on whether the corporation should pursue the claims. In these circumstances, corporate boards may appoint "special litigation committees," which are smaller committees composed of "disinterested board members" or "individuals appointed by the board" who are "charged with informing themselves fully on the issues underlying the derivative suit and deciding whether pursuit of litigation is in the best interests of the corporation." *Janssen*, 662 N.W.2d at 884; DeMott, Shareholder Derivative Actions: Law and Practice § 5:14. In other words, special litigation committees operate by receiving a delegation of the board's authority to decide whether to pursue the claims proposed by the plaintiffs. A court will typically defer to the decision of a special litigation committee if the board properly delegated its authority, the committee was sufficiently independent from the board of directors to dispassionately review the derivative lawsuit, and the committee made an informed decision in good faith. *Janssen*, 662 N.W.2d at 888; DeMott, *supra*, at § 5:14.

In this case, the board has suggested the appointment of a special litigation committee consisting of individuals from outside the organizations. At a minimum, a committee proposed under these circumstances invites questions about the manner in which the external members were selected, including "the circumstances of the appointment and the understanding with which it was accepted." DeMott, *supra*, at § 5:18. But a more fundamental concern is whether the use of the "special litigation committee" represents a proper delegation of the board's authority. DeMott, *supra*, at § 5:14. Here, returning to the observations made above, the procedural standard of review requires the court to assume that the board is currently improperly constituted, and that the board is currently without the authority to act.[*] See *Pomeroy v. Sligar*, No. 23-CV-00293, Verified Second Amended Complaint at ¶¶ 3–4, 23, 98–151, 171–72 (Vt. Super. Ct. Sept. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Proposed Verified Third Amended Complaint ¶¶ 3–4, 23, 98–151, 179–80 (Vt. Super. Ct. May 8, 2024). If that is true—and the court must assume that it is—then the board is currently without the authority to appoint a special litigation committee, and the court would not be able to accept any recommendations made.

Yet it does not follow that the court must therefore order full discovery on all of the derivative claims and schedule a trial, as plaintiffs have suggested. An approach along those lines would not be consistent with the rules that apply to derivative litigation. As mentioned, one of those rules is that the nonprofit organizations themselves must make a determination about whether to pursue the claims being advanced on their behalf. And while the court has just explained that the current procedural posture of the lawsuit does not facilitate a determination of that nature, that does not mean that the nonprofit organizations must be deprived of the opportunity to make their own decision. It suggests instead that the court should endeavor to resolve the procedural obstacles that prevent the determination from being made. In this case, that means that the court should resolve the question of whether the board is currently improperly constituted, based upon the allegations that the board acted improperly in connection with the meetings held in November 2022 and January 2023.

---

[*] This does not mean that, in fact, the boards are currently constituted improperly, or that the boards are currently without power to act. It only means that, for purposes of this litigation, the court must currently assume those facts to be true, until such time as a determination can be made about the merits of the claims. It is unavoidable, however, that even the suggestion casts a cloud over the current work of the nonprofit organizations. This concern highlights the importance of resolving this issue promptly.

A second rule is known as the "contemporaneous ownership" rule, and it provides that derivative lawsuits may only be brought by shareholders or members who held that status "at the time of the transaction of which the plaintiff complains," Vt. R. Civ. P. 23.1, and "at the time of bringing the proceeding." 11B V.S.A. § 6.40(b). The "contemporaneous ownership" rule serves the purpose of ensuring that stockholders cannot buy their way into derivative litigation by purchasing stock after the challenged transactions have occurred, and that nonprofit directors cannot initiate derivative actions to litigate events that occurred before they joined the board. DeMott, *supra*, at § 4:3; 7C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1826; accord *In re Facebook, Inc., Initial Public Offering Derivative Litigation*, 797 F.3d 148, 157 (2d Cir. 2015) (explaining that the "contemporaneous ownership" rule is meant to ensure that derivative actions are not misused to further the litigation of "purchased grievances") (internal quotations omitted).

A third rule is known as the "continuous ownership" rule, and it provides that derivative lawsuits may not be maintained (even if properly brought) "if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Vt. R. Civ. P. 23.1. It is generally accepted that this provision includes a requirement that derivative plaintiffs maintain their status in the organization "throughout the pendency of the litigation," for the purpose of ensuring that the derivative plaintiffs continue to represent the interests of the corporation as well as "similarly situated" stockholders, members, or directors throughout the duration of the lawsuit. DeMott, *supra*, at § 4:3; 7C Wright & Miller, *supra*, at § 1826; *Johnson v. United States*, 317 F.3d 1331, 1333–34 (Fed. Cir. 2003); *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984); accord *In re Facebook, Inc.*, 797 F.3d at 157 (explaining that the "continuous ownership" rule "stems from the equitable nature of derivative litigation which allows a shareholder to step into the corporation's shoes") (internal quotations omitted).

A question arose earlier in the litigation about whether the "continuous ownership" rule applied to nonprofit organizations. Authority on the issue is scant, because most states do not permit derivative actions at all in the context of nonprofit organizations. DeMott, *supra*, at § 2:12. In states where nonprofit derivative actions are permitted, there are a number of cases holding that the rule applies, reflecting a view that former nonprofit directors should not be permitted to retain decisional influence in a nonprofit organization by maintaining derivative litigation even after they have lost their seats as directors, e.g., *United Supreme Council AASR SJ v. McWilliams*, 586 S.W.3d 373, 384–85 (Tenn. Ct. App. 2019); *Pall v. McKenzie Homeowners' Ass'n, Inc.*, 995 N.Y.S.2d 400, 401–02 (N.Y. App. Div. 2014); *Fenley v. Kamp Kaintuck, Inc.*, 2011 WL 5443440 (Ky. Ct. App. Nov. 10, 2011). And while the court previously endorsed a different view, expressed in *Turner v. Victoria*, 532 P.3d 1101 (Cal. 2023), the court's prior ruling was substantially informed by (1) the fact that defendants' motion had relied upon an intermediate appellate decision in the *Turner* case, which had subsequently been reversed by the state supreme court, and (2) the court's concern that dismissal of the derivative claims on these grounds would be inconsistent with the allegations in the complaint that plaintiffs are, in fact, still members of the boards.

Additional concerns were raised in the *Turner* decision. One of those concerns was that the status of a plaintiff as a director or trustee of a nonprofit organization depends upon elections, and there is accordingly a risk that a trustee who initiates a derivative action may lose a subsequent election and therefore lose the ability to maintain the lawsuit. 532 P.3d at 1110. In its prior decision, the court felt this concern to be resonant because of the allegations in the case that the plaintiffs were wrongfully

removed from their roles as trustees. Even in situations wherein the issue of wrongful removal was not alleged, this could still be a concern. In this case, for example, it appears that the trustees are elected annually, and it is not likely that derivative litigation will often be commenced and completed within a period of time that corresponds to a trustee's annual term. A countervailing consideration, however, is that the term length of nonprofit trustees is not set in stone, but rather chosen by the nonprofit organization as part of their bylaws. A nonprofit may choose the duration of a trustee's term, up to a period of six years, 11B V.S.A. § 8.05(a), and a nonprofit may arrange for staggered terms of directors, 11B V.S.A. § 8.06. For this reason, the interaction between the "contemporaneous ownership" and "continuous ownership" rules and the structure of a given nonprofit organization's board of trustees is something that will be different in every case, and dependent upon the choices made by the nonprofit organization involved in the litigation. It is consistent with the policies favoring self-determination of nonprofit organizations to give effect to their choices regarding directorship terms, rather than to allow former directors to retain influence in the organization by commencing derivative actions shortly before their term expires and then maintaining that influence for extended periods of time.

A second concern addressed in the *Turner* decision was the situation in which a state's nonprofit governance statutes include an analogue to the "contemporaneous ownership" requirement, e.g., 11B V.S.A. § 6.40(b), but not an analogue to the "continuous ownership" rule. A number of other cases have resolved this concern by observing that the two requirements serve different purposes, and derive from different doctrinal sources. A "contemporaneous ownership" requirement is meant to ensure that a prospective plaintiff does not purchase their way into existing litigation, and frequently derives from statute. DeMott, *supra*, at § 4:3; *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 297 (2d Cir. 2003). By contrast, the "continuous ownership" requirement is meant to ensure that a plaintiff continues to represent the interests of the corporation throughout the pendency of the lawsuit, and frequently derives from procedural rules (e.g., Vermont Civil Procedure Rule 23.1), jurisprudential rules related to standing doctrines, and equitable considerations applicable to derivative actions. *In re Facebook, Inc.*, 797 F.3d at 157; *McWilliams*, 586 S.W.3d at 380; *Arkansas Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 894 (Del. 2013); *Metal Tech Corp. v. Metal Teckniques Co.*, 703 P.2d 237, 242 (Or. Ct. App. 1985). In other words, the absence of a "continuous ownership" rule from a corporate-organization statute does not support the conclusion that the rule either does not exist or should not apply. Instead, courts recognize that both rules exist (whether sourced from statute, rule, case law, or equity), and that the statutory "contemporaneous ownership" requirement is a necessary, but not sufficient, condition of a plaintiff's standing to bring and maintain a derivative action. DeMott, *supra*, at §§ 4:2–4:3.

A third concern addressed in the *Turner* decision was the policy view expressed in a Restatement that both current and former members of nonprofit boards ought to be able to bring derivative actions on behalf of nonprofit organizations, for a variety of reasons. 532 P.3d at 1116. Although these policies could be adopted in the future by legislative or rule-committee actions, the policies reflected in the discussion do not appear to be consistent with the existing rules established in Vermont by statute, e.g., 11B V.S.A. § 6.40(b), and by procedural rule, e.g., Vt. R. Civ. P. 23.1.

The determination as to whether a plaintiff has maintained their status in an organization throughout the pendency of the litigation is not typically a contested factual issue. A shareholder either owns shares or they do not, and while the nature of a shareholder's interest may raise other issues (such as, e.g., whether the application of the rule is affected by a merger, or whether a shareholder's creditor may assert the claim, or whether the owner of contingent rights may assert the claim), those issues are usually legal in nature, rather than factual. DeMott, *supra*, at § 4:3. In most cases, therefore, the motion to dismiss presents an adequate procedural vehicle for resolving the question of whether the plaintiff has maintained their status in the organization and therefore represents the interests of the organization and its shareholders. Here, however, for the reasons discussed above, the procedural assumptions that apply to motions to dismiss prevent the motion from serving a helpful role in determining whether these plaintiffs have maintained their status in the organization—in other words, whether they are still trustees who were wrongfully removed, or whether they are former trustees who were not reelected.

It is nevertheless critical to ensure that this question is resolved. An answer is needed in order to determine whether the derivative claims should proceed, and in order to permit the nonprofit organizations an opportunity to make a decision about whether to pursue the proposed claims. The court is responsible for managing its derivative litigation in such a way as to ensure that these issues are addressed before a merits decision is undertaken. *In re Facebook, Inc.*, 797 F.3d at 157–58; *Metal Tech Corp.*, 703 P.2d at 242.

In this case, the necessary antecedent question is presented by Count VI of the second amended complaint. In that count, plaintiffs claim that the defendants took improper actions at meetings held on November 11, 2022, November 23, 2022, and January 27, 2023, that the boards have been improperly constituted since then, and that plaintiffs are still trustees of both organizations. See *Pomeroy v. Sligar*, No. 23-CV-00293, Verified Second Amended Complaint at ¶¶ 3–4, 23, 98–151, 171–72 (Vt. Super. Ct. Sept. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Proposed Verified Third Amended Complaint ¶¶ 3–4, 23, 98–151, 179–80 (Vt. Super. Ct. May 8, 2024). Plaintiffs contend that if those predicate facts are proven, they are entitled to a declaration that "all actions of the defendants since November 11, 2022 have been *ultra vires* and are of no legal force or effect." See *Pomeroy v. Sligar*, No. 23-CV-00293, Verified Second Amended Complaint at ¶¶ 171–72 (Vt. Super. Ct. Sept. 7, 2023); *Pomeroy v. Sligar*, No. 23-CV-00293, Proposed Verified Third Amended Complaint at ¶¶ 179–80 (Vt. Super. Ct. May 8, 2024).

For all of the reasons described in this opinion, it appears to the court that a merits determination regarding this claim would materially advance the litigation, at least from a management perspective. If plaintiffs are able to prove their allegations in Count VI, then they will have proven that they are still trustees of the board with at least threshold authority to maintain this litigation, and further determinations may proceed. If plaintiffs fail to prove their allegations, however, then the derivative claims should be dismissed for the reasons identified above, and plaintiffs will be able to proceed with discovery and adjudication of their direct claims only. At that point, it will be established whether plaintiffs are still trustees of the nonprofit organizations, and the court will no longer be required to assume the truth of plaintiffs' averments.

A court has considerable discretion in managing its litigation in order to facilitate the sequencing of discovery and the determination of merits issues. Vt. R. Civ. P. 26(d) & (f); Vt. R. Civ. P. 42(b); 9A Wright & Miller, Federal Practice and Procedure: Civil 3d § 2387. In this case, for the above-stated reasons, the court makes the following orders:

(1) A separate trial is ordered with respect to Count VI of the Second Amended Complaint.

(2) Until further order of the court, discovery shall be limited to that which is necessary to resolve Count VI of the Second Amended Complaint.

(3) All written discovery with respect to Count VI is to be sent by July 15, 2024, with responses due by August 15, 2024, unless that time is extended by further order of the court.

(4) All depositions with respect to Count VI shall be completed by September 20, 2024, unless that time is extended by further order of the court.

(5) Mediation with Attorney Hemley shall be completed by October 18, 2024. The mediation shall be in person. The court is aware that it is ordering mediation prior to permitting discovery on the remaining claims in the complaint.

(6) Any dispositive motions shall be filed by November 1, 2024, with any responses due within the time permitted by rule or as extended by further order of the court. Any dispositive motion shall include a certification that the moving party satisfactorily participated in mediation prior to the filing of the motion.

(7) If no dispositive motions are filed by the deadline set, a pretrial conference will be scheduled, with the parties to be trial-ready by November 15, 2024. Satisfactory completion of mediation is a prerequisite to the scheduling of a trial on Count VI of the Second Amended Complaint.

(8) Defendants' Motion to Stay Discovery (Motion 12), filed January 10, 2024, is denied.

(9) Plaintiffs' Motion for Discovery and ADR Order (Motion 14), filed January 18, 2024, is denied.

(10) Defendants' Motion for Protective Order (Motion 15), filed April 24, 2024, is denied.

(11) Plaintiffs' Motion to Compel Discovery (Motion 17), filed May 8, 2024, is denied.

Electronically signed on Monday, June 10, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 06/10/24
Windsor Unit