**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1362
_____

HAROLD M. HOFFMAN,
individually and on behalf of those similarly situated,
Appellant

v.

NORDIC NATURALS, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-03291)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 9, 2016

Before:  FUENTES,* KRAUSE, and ROTH, *Circuit Judges*

(Filed: September 14, 2016)

_____

* Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

Harold M. Hoffman, Esq.
240 Grand Avenue
Englewood, NJ 07631
      Pro Se Attorney

Michael R. McDonald, Esq.
Jennifer M. Thibodaux, Esq.
Gibbons
One Gateway Center
Newark, NJ  07102
      Counsel for Appellee

_____

OPINION OF THE COURT
_____


FUENTES, *Circuit Judge*.

      Harold M. Hoffman is a serial *pro se* class action litigant from New Jersey who frequently sues under the New Jersey Consumer Fraud Act.  In a previous opinion, we noted that Hoffman is "an attorney who has made a habit of filing class actions in which he serves as both the sole class representative and sole class counsel."[1]  According to the

---

[1] *Hoffman v. Nutraceutical Corp.*, 563 F. App'x 183, 184 (3d Cir. 2014); *see, e.g.*, *Hoffman v. Liquid Health Inc.*, No. 14-1838, 2014 WL 2999280 (D.N.J. July 2, 2014); *Hoffman v. DSE Healthcare Sols., LLC*, No. 13-7582, 2014 WL 1155472 (D.N.J. Mar. 21, 2014); *Hoffman v. Lumina Health Prods.*,

record in this case, Hoffman has sued nearly 100 defendants in New Jersey state court in a period of less than four years.[2] These defendants include Target, Whole Foods Market, GNC, Trader Joes, Barleans Organic Oils LLC, Paradise Herbs & Essentials Inc., Honest Tea Inc., Time Warner Cable, American Express, Bio Nutrition Inc., and many more.[3]

In this case, Hoffman chose to sue Nordic Naturals, Inc. for its allegedly false and misleading advertisements for fish oil supplements. Prior to bringing the present action, Hoffman filed a similar lawsuit against Nordic, asserting virtually identical claims based on the same set of facts. The District Court dismissed that first lawsuit for failure to state a claim. The District Court accordingly dismissed this second lawsuit as procedurally barred by the first. For the following reasons, we will affirm.

## I.

In August 2012, Harold Hoffman filed a putative class action lawsuit *pro se* against Nordic Naturals in New Jersey state court for violations of the New Jersey Consumer Fraud Act ("*Hoffman I*").[4] He alleged that Nordic misrepresented

*Inc.*, No. 13-4936, 2013 WL 5773292 (D.N.J. Oct. 24, 2013); *Hoffman v. Nat. Factors Nutritional Prods.*, No. 12-7244, 2013 WL 5467106 (D.N.J. Sept. 30, 2013).

[2] *Hoffman v. Nordic Naturals, Inc.*, No. 2-14-cv-3291, ECF No. 12, Ex. 2.

[3] *See id.*

[4] In *Hoffman I*, Hoffman alleged five claims under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*: (i) unconscionable commercial practice; (ii) deception;

3

the "safety, quality, testing, constituent ingredients and purity" of its product "Ultimate Omega," a fatty acid fish oil supplement.[5]  Specifically, Hoffman claimed that, contrary to Nordic's product labeling and marketing representations, Ultimate Omega is "tainted by an undisclosed overdose of a potentially harmful ingredient."[6]    Thus, according to Hoffman, Nordic's representations that it is committed to delivering the "world's safest" omega oils and has achieved "award-winning" purity levels are false.[7]  The putative class consisted of all nationwide purchasers of Ultimate Omega within a six-year period.[8]

Nordic removed *Hoffman I* to federal court pursuant to the Class Action Fairness Act ("CAFA").[9]  CAFA gives federal district courts original jurisdiction over class actions in which (i) the aggregate amount in controversy exceeds $5 million, (ii) there are at least 100 members in the putative class, and (iii) there is minimal diversity between the parties.[10]  Hoffman filed a motion in the District Court to remand the case back to state court, which the District Court

---

(iii) fraud; (iv) false pretense, false promise and/or misrepresentation; and (v) knowing concealment, suppression and/or omission of material facts.  Suppl. App. 31-33.  He also asserted claims for common law fraud, unjust enrichment, breach of express warranty, and breach of implied warranty of merchantability.  *Id.* at 34-39.

[5] *Id.* at 26, ¶ 19.

[6] *Id.*

[7] *Id.* at 22, ¶ 3.

[8] **[*Id.* at 28, ¶ 27.]**

[9] *See* 28 U.S.C. §§ 1441(a), 1453; *id.* § 1332(d).

[10] *Id.* § 1332(d)(2), (d)(5)(b).

denied.[11] Nordic moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[12] The District Court dismissed *Hoffman I* without prejudice and gave Hoffman leave to file an amended complaint within 30 days.[13]

But rather than file an amended complaint in the District Court, Hoffman filed a new class action lawsuit against Nordic in New Jersey state court within the 30-day window given to amend *Hoffman I*. This second lawsuit ("*Hoffman II*") arose from facts identical to those in *Hoffman I*—Hoffman's purchase of Ultimate Omega in May 2012—and it asserted virtually identical claims under the New Jersey Consumer Fraud Act.[14] But there was one significant difference: the putative class size was substantially smaller. Rather than a class consisting of all nationwide purchasers of all available sizes of Ultimate Omega within a six-year period, the putative class in *Hoffman II* was restricted to New Jersey consumers who purchased only a 60-count bottle of Ultimate Omega (as opposed to a 120-count or 180-count bottle) within a one-year period.[15] The purpose of this change was, it seems, to reduce the amount recoverable and therefore defeat federal jurisdiction.

Undeterred by Hoffman's tactics, Nordic removed *Hoffman II* back to the District Court. Nordic then moved to

---

[11] **[Suppl. App. 51-60.]**

[12] **[*See id.* at 61.]**

[13] **[*Id.*]**

[14] In *Hoffman II*, Hoffman alleged the same five claims under the New Jersey Consumer Fraud Act. App. 37-40. He did not raise any common law claims.

[15] **[App. 26.]**

5

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), claiming that *Hoffman II* was barred by New Jersey's entire controversy doctrine, which is New Jersey's "application of traditional res judicata principles."[16] In the alternative, Nordic argued that the complaint failed to state a claim under the New Jersey Consumer Fraud Act.[17] Hoffman moved for limited discovery to determine whether subject matter jurisdiction existed under CAFA.[18] He argued that, given the significantly reduced class size in *Hoffman II*, limited discovery would help the court ascertain whether the amount in controversy exceeded the $5 million jurisdictional minimum.[19]

The District Court granted Nordic's motion and dismissed *Hoffman II* with prejudice.[20] It held that the action was procedurally barred under New Jersey's entire controversy doctrine and, in the alternative, that Hoffman's claims under the New Jersey Consumer Fraud Act failed for substantially the same reasons they failed in *Hoffman I*.[21] The District Court then dismissed as moot Hoffman's motion for limited discovery, explaining that Hoffman's artificial narrowing of the putative class was a "poorly disguised

---

[16] *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).
[17] [*See* **App. 5.**]
[18] [**App. 74-78.**]
[19] [*Id.*]
[20] [**App. 14.**]
[21] [**App. 1-13.**]

6

attempt" to destroy CAFA jurisdiction.[22]  Hoffman appealed to this Court.[23]

## II.

Hoffman challenges (1) the District Court's subject matter jurisdiction under CAFA; (2) the District Court's application of New Jersey's entire controversy doctrine; and (3) the District Court's alternative conclusion that the complaint failed to state a claim upon which relief could be granted.  We review these issues *de novo*.[24]

---

[22] *Hoffman v. Nordic Naturals, Inc.*, No. 14-3291, 2015 WL 179539, at *7 (D.N.J. Jan. 14, 2015).

[23] Nordic claims that Hoffman's appeal was untimely.  We disagree.  Hoffman's notice of appeal was filed within 30 days of the District Court's order dismissing *Hoffman II*.  *See* Fed. R. App. P. 4(a)(1)(A).  Accordingly, we will deny Nordic's motion to dismiss for lack of appellate jurisdiction.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

[24] *See Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015); *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013).

### A. Subject Matter Jurisdiction

Hoffman devotes much of his appeal to challenging the District Court's subject matter jurisdiction. According to him, the District Court was required to make jurisdictional findings of fact to ensure that the amount in controversy met the jurisdictional minimum under CAFA. Hoffman is incorrect.

It is true that a federal court may not rule on the merits of an action without first ascertaining whether it has subject matter jurisdiction to do so.[25] But in *Sinochem International Co. v. Malaysia International Shipping Corp.*,[26] the Supreme Court held that a court is not required to establish jurisdiction before dismissing a case on non-merits grounds, since such a dismissal "means that the court will not proceed at all to an adjudication of the cause."[27] In other words, "jurisdiction is vital only if the court proposes to issue a judgment on the merits."[28] In *Sinochem* itself, the district court dismissed the case on the ground of *forum non conveniens*, which the Supreme Court explained is merely "a determination that the merits should be adjudicated elsewhere."[29]

In this case, the District Court dismissed *Hoffman II* on claim preclusion grounds, which is not technically a judgment

---

[25] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).
[26] 549 U.S. 422 (2007).
[27] *Id.* at 431 (internal quotation marks omitted).
[28] *Id.* (internal quotation marks omitted).
[29] *Id.* at 432.

on the merits.[30]   Rather, claim preclusion is merely "a determination that the merits [have *already* been] adjudicated elsewhere."[31]   Indeed, for reasons of fairness, finality, and judicial economy, claim preclusion *prohibits* a court from reaching the merits of a claim.   The District Court was therefore permitted to "bypass" the jurisdictional inquiry in favor of a non-merits dismissal on claim preclusion grounds.[32]   Accordingly, we reject Hoffman's subject matter jurisdiction challenge on appeal.[33]

### B.  Claim Preclusion

The District Court operated under the assumption that New Jersey's entire controversy doctrine—"a state rule of procedure that discourages successive litigation concerning

---

[30] *See Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) ("If the doctrine of res judicata is properly applicable . . . the case may be disposed of without reaching the merits of the controversy.").

[31] *Sinochem*, 549 U.S. at 432.

[32] *See Davis Int'l, LLC v. New Start Grp. Corp.*, 488 F.3d 597, 604 (3d Cir. 2007) (holding that, per *Sinochem*, the district court was not required to first establish jurisdiction before dismissing the case on estoppel grounds).

[33] The District Court reached the merits of Hoffman's claims in the alternative, and, per *Sinochem*, was required to establish subject matter jurisdiction before doing so.  But the District Court properly held that *Hoffman II* should be dismissed on claim preclusion grounds, and *Sinochem* tells us that we can affirm on that non-merits dismissal without addressing the merits-based dismissal at all.

the same subject matter"[34]—applies in this case. However, in *Paramount Aviation Corp. v. Agusta*,[35] we held that the entire controversy doctrine "is not the right preclusion doctrine for a federal court to apply when prior judgments were not entered by the courts of New Jersey."[36] Upon conducting an extensive *Erie* analysis, we concluded that federal, not New Jersey, claim preclusion principles apply in successive federal diversity actions.[37] That is, when the first judgment is rendered by a federal district court in New Jersey sitting in diversity, as it was here, federal claim preclusion, not New Jersey's entire controversy doctrine, determines whether a successive lawsuit is permissible.[38] Indeed, courts in our Circuit have routinely applied *Paramount Aviation* to reject applying New Jersey's entire controversy doctrine when the first judgment was not rendered by a New Jersey state court.[39]

---

[34] *Ricketti*, 775 F.3d at 612.

[35] 178 F.3d 132 (3d Cir. 1999).

[36] *Id.* at 138.

[37] *Id.* at 144-45; *see also Gannon v. Am. Home Prods., Inc.*, 48 A.3d 1094, 1104 (N.J. 2012) (concluding that because the first judgment was rendered by a federal court, it "look[s] to federal law to determine that judgment's preclusive effect" (citing *Paramount*, 178 F.3d at 145)).

[38] *See Paramount*, 178 F.3d at 142 ("New Jersey's main justification for the doctrine, its interest in preserving its judicial resources, is minimized when none of the prior litigation took place in New Jersey state courts.").

[39] *See, e.g.*, *Bach v. McGinty*, No. 12-5853, 2015 WL 1383945, at *2 (D.N.J. Mar. 25, 2015) ("The entire controversy doctrine will preclude claims brought in federal court only if the preclusive judgment came from a New Jersey court . . . ."); *Yantai N. Andre Juice Co. v. Kupperman*,

10

The Supreme Court's decision in *Semtek International Inc. v. Lockheed Martin Corp.*[40] creates an interesting doctrinal question vis-à-vis *Paramount Aviation.*[41] In *Semtek*, the Supreme Court held that we apply the claim preclusion law "that would be applied by state courts in the State in which [a] federal diversity court sits," unless "the state law is incompatible with federal interests."[42] This seems to suggest that we should apply New Jersey's entire controversy doctrine to judgments rendered by federal diversity courts in New Jersey. Yet *Paramount Aviation* tells us that the entire controversy doctrine is procedural rather than substantive and that, therefore, consistent with *Erie*, we should apply federal claim preclusion principles to federal diversity judgments. We need not resolve this conflict, however, because under either New Jersey or federal claim preclusion principles we come to the same result.[43]

---

No. 05-CV-1049, 2005 WL 2338854, at *3 (D.N.J. Sept. 23, 2005) ("In this case, the issuing court in 2002 was the United States District Court for the District of New Jersey. Therefore, the New Jersey Entire Controversy Doctrine is inapplicable.").

[40] 531 U.S. 497 (2001).

[41] We recently discussed this issue in *Chavez v. Dole Food Co.*, --- F.3d ---, 2016 WL X, at *Y n.130 (3d Cir. Sept. Z, 2016) (en banc) [placeholder].

[42] *Id.* at 508-09.

[43] This approach is consistent with the approach taken by another panel of this Court when addressing a similar issue. *See McHale v. Kelly*, 527 F. App'x 149, 151-52 (3d Cir. 2013).

"Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[44]  The third factor "generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."[45]

All three elements are present here.[46]  There is no question that the parties in *Hoffman I* and *Hoffman II* are identical.  Likewise, the underlying event giving rise to Hoffman's claims is the same in both cases: Hoffman's exposure to Nordic's advertising for Ultimate Omega and consequent decision to purchase Ultimate Omega in New Jersey in May 2012.  Recognizing these similarities, Hoffman seems to argue only that the District Court's dismissal

---

[44] *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (internal quotation marks omitted).

[45] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (citations and internal quotations omitted).

[46] We note that although Nordic technically raised an entire controversy defense in its motion to dismiss, because the substantive analysis for purposes of this case is functionally the same, we will construe Nordic's motion as raising a res judicata defense.  *See Rycoline Prods.*, 109 F.3d at 886 (describing the entire controversy doctrine and res judicata as "blood relatives"); *Electro-Miniatures Corp. v. Wendon Co.,* 889 F.2d 41, 43 n.5 (3d Cir. 1989) (describing the entire controversy doctrine and res judicata as "inextricably related").  We may affirm on any ground supported by the record.  *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014).

12

without prejudice of *Hoffman I* was not a "final" judgment. We disagree.

The District Court dismissed *Hoffman I* without prejudice for failure to state a claim – a decision on the merits – and provided Hoffman 30-days' leave to amend.[47] When that 30-day period expired, the District Court's decision became final. Indeed, we have held that a plaintiff can convert a dismissal without prejudice into a final order by "declar[ing] his intention to stand on his complaint."[48] By opting to not amend his complaint in *Hoffman I* within the time frame provided by the District Court, Hoffman elected to "stand on his complaint," thereby converting the District Court's dismissal into a final order.[49] We reject Hoffman's

---

[47] For these purposes, a motion for judgment on the pleadings under Rule 12(c) is identical to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

[48] *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976).

[49] *See, e.g.*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 31 n.3 (3d Cir. 2011) ("[Plaintiff's] failure to amend his complaint in the time frame allotted by the District Court reflects his intention to stand on his complaint, which renders the District Court's order final . . . ."); *Berke v. Bloch*, 242 F.3d 131, 135 (3d Cir. 2001) (concluding that the plaintiffs' failure to reinstate their action within the 60-day leave given to do so was "akin to standing on their complaint"); *Batoff v. State Farm Ins.*, 977 F.2d 848, 851 n.5 (3d Cir. 1992) ("[B]y failing to move to amend within the 30 days granted by the court, [plaintiff] elected to stand on his complaint. Thus,

contention that his filing of *Hoffman II* evidenced his intention to *not* stand on his complaint in *Hoffman I*. Hoffman cannot plausibly make this argument, which implies that he intended to fix the flaws in *Hoffman I*, while at the same time adamantly maintaining that *Hoffman II* is an entirely different lawsuit based on entirely different claims. If Hoffman had intended to fix the problems in *Hoffman I*, he was required to file an amended complaint in the District Court. Filing a new action in a different court does not prevent the District Court's order from ripening into a final order. Thus, we conclude that all three elements of claim preclusion are satisfied. *Hoffman II* is therefore procedurally barred by *Hoffman I*.

We acknowledge that res judicata is an affirmative defense that typically may not afford the basis for a Rule 12(b)(6) dismissal unless it is "apparent on the face of the complaint."[50] If not apparent, the district court must either deny the 12(b)(6) motion or convert it to a motion for summary judgment and provide both parties an opportunity to present relevant material.[51] The ultimate purpose of this rule is to avoid factual contests at the motion to dismiss stage. However, we find this rule to be inapplicable to the circumstances of this case.

There are no factual disputes here. Moreover, both the District Court and the parties were not only aware of but

---

even if the order of dismissal was not final when entered, it became final after 30 days.").

[50] *Rycoline Prods.*, 109 F.3d at 886 (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

[51] *Id.* at 886-87.

intimately familiar with Hoffman's previous lawsuit, since the same judge adjudicated *Hoffman I* and ruled on those claims. The ordinary requirement that a potential res judicata defense appear "on the face" of *Hoffman II* is unnecessary when the District Court was already aware of *Hoffman I* and indeed entered a final judgment in that case. And, of course, the two pleadings that are before us and were before the District Court – the complaint in *Hoffman I* and the complaint in *Hoffman II* – as well as the judgment in *Hoffman I*, are matters of public record.[52] We therefore find no error in the District Court's decision to look to these records and grant Nordic's 12(b)(6) motion to dismiss.

## III.

For the foregoing reasons, we will affirm the District Court's dismissal of *Hoffman II*.

---

[52] *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record . . . ."); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); *see also C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) ("Our interpretation of the phrase 'face of the complaint' includes public records and materials embraced by the complaint, and materials attached to the complaint." (citations omitted)).