**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1728
_____

RODNEY ANDERSON,
                                        Appellant

v.

T. BICKELL; K. NICOLE; M. SHOWALTER;
C. BOOZEL; K. JACKSON; T. PARKES;
CL GREEN, CL; B. JESHONEK; J. ECKARD;
M. MCCONNELL; M. GOMES; PAULA PRICE;
HOLLIBAUGH; FATHER WIREMAN;
AMANDA WEST; DORINA VARNER

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-14-cv-01792)
District Judge:  Honorable A. Richard Caputo

_____

Argued July 10, 2018

Before:  SHWARTZ, NYGAARD, and RENDELL, Circuit Judges

(Opinion filed November 2, 2018)

Marcus A. Gadson
Timothy A. Work [Argued]
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036

*Counsel for Appellant*

Raymond W. Dorian [Argued]
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050

     *Counsel for Appellees T. Bickell, K. Nicole, Mary*
     *Showalter, K. Jackson, Green, CL, and B. Jeshonek*

John J. Hatzell, Jr.     [Argued]
Haddix and Associates
1650 Market Street
Suite 3800
Philadelphia, PA 19103

     *Counsel for Appellees T. Parkes and C. Boozel*

_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

Rodney Anderson appeals from the District Court's dismissal of his amended complaint. We will affirm.[1]

## I.

We write primarily for the parties, who are familiar with the record, so we briefly set forth only those facts necessary to explain our decision. Anderson is a Pennsylvania state prisoner who was formerly incarcerated at SCI-Camp Hill and is currently

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Anderson appealed pro se, but we appointed counsel to represent him on appeal. We are grateful to appointed counsel both for accepting this matter pro bono and for the quality of their briefing and argument in this case.

incarcerated at SCI-Huntingdon. He filed suit pro se against numerous officials and employees of the Pennsylvania Department of Corrections as well as employees of one of its medical contractors. As relevant on appeal, Anderson asserted two kinds of claims.

First, he asserted claims under 42 U.S.C. § 1983 that defendants[2] provided inadequate medical care in violation of the Eighth Amendment. These claims related primarily to a hand and wrist injury that Anderson suffered after falling at SCI-Camp Hill in July 2011, which ultimately required surgery, and to a torn meniscus in his knee.

Second, Anderson asserted claims under Title II of the Americans With Disabilities Act ("ADA") based on defendants' alleged denial of access to religious services and the law library at SCI-Huntingdon. Anderson alleged that defendants provide these services only on the prison's upper floors and that he is confined to the first floor by medical conditions that resulted in a "bottom tier/bottom bunk" restriction and that make it difficult for him to climb stairs.

Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). The District Court granted them and dismissed Anderson's complaint, but it did so in part without prejudice and with leave to amend. Anderson then filed an amended complaint seeking to cure the deficiencies identified by the District Court. Defendants moved to dismiss his

---

[2] Our disposition does not require us to identify Anderson's specific allegations against specific defendants, so we refer herein to "defendants" for ease of reference without suggesting that any particular defendant is responsible for any of the conduct alleged.

3

amended complaint as well, and the District Court then dismissed Anderson's amended complaint with prejudice. Anderson appeals.[3]

## II.

Anderson argues that the District Court erred in dismissing his Eighth Amendment and ADA claims for several reasons. Although some of his arguments are well taken, we ultimately will affirm the District Court's judgment in all respects for the reasons discussed below.

### A. Anderson's Eighth Amendment Claims

The District Court dismissed Anderson's Eighth Amendment claims on various grounds, including that some are barred by the statute of limitations and that others fail to specify various defendants' personal involvement. We will assume that Anderson has stated grounds for tolling the statute of limitations and has alleged the personal involvement of at least some defendants. We will affirm, however, on the ground that Anderson failed to state an Eighth Amendment claim on the merits.

To state such a claim, Anderson had to plausibly allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to

---

[3] We have jurisdiction under 28 U.S.C. § 1291. We review de novo the dismissal of a complaint under Rule 12(b)(6). See Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 105 (3d Cir. 2018). "To survive a motion to dismiss, a complaint must contain enough facts to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). In determining whether Anderson's claims are plausible, we accept his factual allegations as true and draw all reasonable inferences in his favor. Id. We also consider both Anderson's allegations and the numerous exhibits that he attached to his complaints. Id. "And if [Anderson's] own exhibits contradict [his] allegations in the complaint, the exhibits control." Id. at 112. We may affirm on any ground supported by the record. See Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 279 n.46 (3d Cir. 2016).

4

that need." Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016). Defendants do not dispute that Anderson has alleged a serious medical need. Allegations of deliberate indifference, however, face a high threshold. A prison official is deliberately indifferent only "if the official knows that inmates face a substantial risk of serious harm and disregards that risk[.]" Id. at 335 (quotation marks omitted). Allegations of mere negligence or disagreement with medical decisions do not suffice. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). That is because "prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017). Thus, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference[.]" Id.

Anderson has not alleged deliberate indifference here. Anderson's primary complaint relates to injuries he suffered after falling at SCI-Camp Hill in July 2011, a fall that left him with broken bones and a damaged ligament in his hand and wrist. Anderson complains that defendants initially misdiagnosed him with a sprained wrist and that it took approximately one year and two months to properly diagnose him and perform surgery. Anderson further alleges in conclusory fashion that there were "continuous needless delays" and that defendants "ignored" his medical needs during this time.

Anderson's exhibits, however, reveal that defendants provided him with a continuous course of treatment. J.A. 113-14, 129, 130, 134-36, 142, 144, 149, 156, 160, 246. After initially diagnosing Anderson with a sprained wrist, defendants prescribed pain medication and physical exercises. Defendants later referred Anderson to an

5

orthopedic specialist and then scheduled him for an MRI and, later, a CT scan. These further diagnostic measures led to the surgery that Anderson ultimately received.

Anderson complains of delays during this process, and deliberate indifference can sometimes be shown when necessary medical care is delayed for non-medical reasons. See Parkell, 833 F.3d at 337. But Anderson has not specified which periods of "delay" he believes were unnecessary, or why, and he has not otherwise alleged anything suggesting that they were the product of deliberate indifference. Moreover, Anderson's documents show that defendants, far from "ignoring" him during this process as he claims, timely and substantively responded to his numerous requests and complaints. Thus, these circumstances do not plausibly suggest that defendants were indifferent to Anderson's injuries.[4]

Anderson takes issue with other aspects of his medical care as well, but those allegations reflect mere disagreement and not deliberate indifference. He complains, for example, that he suffered a torn meniscus in his knee. He acknowledges that defendants have provided knee sleeves, knee braces, and Tylenol for that condition. J.A. 192. He alleges, however, that defendants also should have approved an x-ray, outside consultation, and surgery. "But the question whether an X-ray or additional diagnostic

---

[4] Anderson also complains in this regard that defendants forced him to return to work too soon after his surgery and that, as a result, he sustained additional injuries that required a second surgery. Anderson, however, does not allege anything suggesting that these circumstances were the product of deliberate indifference. To the contrary, Anderson's allegations and documents reveal that, after two days of work, he notified defendants that his hand and wrist had become swollen and they promptly provided a hard cast and a medical "lay-in" of four to six weeks. J.A. 164-65, 244. Anderson did not raise any medical issue regarding this lay-in and instead complained only that it was unpaid. J.A.

techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976) (rejecting very similar claim). Although Anderson disagrees with defendants' medical judgments in this case, he has not alleged anything plausibly suggesting that those judgments reflect deliberate indifference.

### B.    Anderson's ADA Claims

Anderson alleges that defendants violated Title II of the ADA by denying him access to religious services and the law library at SCI-Huntingdon. The District Court dismissed these claims for three reasons. First, the District Court concluded that defendants are not liable under the ADA for monetary damages in their individual capacities. Second, the District Court concluded that defendants are shielded by sovereign immunity from liability for monetary damages in their official capacities. Finally, the District Court concluded that injunctive relief is available on these claims but that Anderson did not request it.

This analysis was incomplete. It is true that Anderson did not specifically request injunctive relief. As defendants concede on appeal, however, his pro se amended complaint can be liberally construed to do so because he complained of ongoing conditions and requested "any additional relief this Court deems just, proper, equitable." J.A. 206. See Wall v. Wade, 741 F.3d 492, 496 n.6 (4th Cir. 2014); Kahan v. Rosenstiel, 424 F.2d 161, 174 (3d Cir. 1970). As for monetary damages, the ADA abrogates official-capacity sovereign immunity under certain circumstances, and the District Court did not address whether it did so in this case. See United States v. Georgia, 546 U.S. 151, 158-

164 ("My issue is that I am not getting paid.").

7

59 (2006); <u>Tennessee v. Lane</u>, 541 U.S. 509, 530-34 (2004); <u>Bowers v. NCAA</u>, 475 F.3d 524, 553-54 (3d Cir. 2007). Nevertheless, we will affirm the dismissal of these claims too on the ground that Anderson failed to state a claim on the merits.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Anderson alleges that defendants violated this provision by denying him access to religious services and the law library. Anderson's own allegations and documents, however, show that he had and has such access.

Anderson's claim regarding religious services requires little discussion. Anderson claims that he is unable to attend Sunday church services because they are held on the prison's fourth floor. But Anderson concedes that these church services are televised on the prison's cable television station, and his documents reveal that he has both a television and a cable subscription. J.A. 185. Anderson has not argued otherwise on appeal. Instead, he argues only that his alleged inability to access the fourth floor prevents him from engaging in congregational worship. Anderson, however, did not allege that televised services are inadequate because they do not provide congregate worship, or even that he wants it. Instead, he alleged only that televised services are inadequate because "not every single inmate owns a TV" or "can afford cable." J.A. 194. As explained above, Anderson himself has both. Thus, whatever the circumstances of other inmates, Anderson has not alleged that defendants have denied these services to him.

As for the law library, Anderson's documents reveal that he has access to the law library and has regularly used it. J.A. 236, 247-57. Once again, Anderson does not argue otherwise on appeal. Instead, he claims that the law library's location on the second floor deprives him of access for ADA purposes in two ways.

First, Anderson alleges that defendants have placed him on "bottom tier/bottom bunk" status because of his medical conditions. He further claims that this status restricts him to the first floor of the prison and that he faces disciplinary charges for accessing the second floor. At oral argument, counsel for some of the defendants represented that bottom tier/bottom bunk status is merely a housing designation that does not restrict prisoners' movement throughout the prison. We cannot and do not rely on that representation at the Rule 12(b)(6) stage.

Even so, Anderson's conclusory allegation that he faces discipline for using the law library is not plausible. The record reveals that Anderson has used the law library for years with the knowledge of multiple prison personnel. Anderson, however, does not allege that anyone has ever disciplined him or threatened to discipline him for that reason. Nor has he identified any policy under which anyone could have done so, and we have located none. Anderson also did not mention any potential discipline in his numerous grievances and requests regarding the law library, and none of defendants' responses mentions that issue either. Thus, we decline to credit Anderson's conclusory assertion that using the law library subjects him to discipline.

Second, Anderson claims that his knee problems make it painful for him to climb the stairs to the second floor. We will assume that, under some circumstances, forcing an

9

inmate to endure pain in order to access a program or service could constitute the denial of access for ADA purposes. Cf. Hill v. Assocs. for Renewal in Educ., Inc., 897 F.3d 232, 239 (D.C. Cir. 2018). Anderson, however, has not plausibly alleged as much here.

It is undisputed that Anderson had access to the law library in general for about three years between his transfer to SCI-Huntingdon on August 30, 2011, and the filing of his complaint on August 18, 2014. Anderson attached numerous grievances and request forms regarding his access to the law library during that time. The vast majority of them complained only of discrete scheduling issues without mentioning any problems with physical access. He did attach three documents in which, between November 2012 and January 2013, he complained that it was painful for him to climb the stairs. J.A. 230-32. In response, defendants advised him that accommodations could be made on an individual basis and that he should report to medical for treatment of his pain. Defendants have treated Anderson's pain with knee sleeves, knee braces, and Tylenol as explained above. And Anderson does not allege that he reported any further problems climbing the stairs during the one and a half years between the last of his January 2013 inmate requests and the filing of his complaint.

We recognize Anderson's allegation that he still suffers pain. Anderson, however, has not alleged that his pain is or ever has been so severe that he felt deterred from using the law library. Cf. Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 73 (2d Cir. 2016) (noting that "deterrence constitutes an injury under the ADA" and holding that the ADA claim of a prisoner with cerebral palsy survived summary judgment in light of evidence that, despite the prison's mobility assistance program, he was still, "at times, unable to

10

visit the law library"). Thus, we question whether Anderson has even alleged an ADA

disability in the first place. See Kelly v. Drexel Univ., 94 F.3d 102, 107-08 (3d Cir.

1996) (discussing cases involving "moderate difficulty walking or climbing stairs,"

including a case in which the plaintiff "had torn his medial meniscus in his knee").

Even assuming that he has, however, he has not plausibly alleged denial of access

to the law library under all of the circumstances presented here. Those circumstances

include the treatment that defendants provided for his knee problems, the lack of any

allegation that those knee problems ever deterred him from using the law library, the fact

that he had regular access to the law library for almost three years, and the lack of any

allegation regarding reports that it was painful for him to access the law library during the

vast majority of that time, including the year and a half before he filed his complaint.[5]

### III.

For these reasons, we will affirm the judgment of the District Court.

---

[5] If Anderson had stated an ADA claim, then he could have sought monetary damages from defendants in their official capacities if, inter alia, his lack of access to the law library also violated the Fourteenth Amendment. See Georgia, 546 U.S. at 159. Anderson, however, has not stated a constitutional claim in that regard. Denial of access to a law library does not deprive a prisoner of access to the courts unless it causes an actual injury by impeding the prisoner's ability to pursue a non-frivolous claim. See Lewis v. Casey, 518 U.S. 343, 351-52 (1996). Anderson argues that his periodic inability to use the law library—due to scheduling issues, and not to his knee problems— prevented him from asserting some of his Eighth Amendment claims within the statute of limitations. Anderson has not been injured in that regard, however, because we have assumed that he stated a basis to toll the statute of limitations and are affirming the dismissal of those Eighth Amendment claims on the alternate ground that he failed to state a claim on the merits. Anderson also argues that greater access to the law library would have made him a more effective advocate on these claims in general, but that argument is too speculative to demonstrate an actual injury.