22-239; 22-243; 22-503

*Phx. Light SF Ltd. v. Bank of N.Y. Mellon; Phx. Light SF DAC v. Bank of N.Y. Mellon; Phx. Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued:  April 12, 2023
Decided:  April 26, 2023

Nos. 22-239, 22-243, 22-503

PHOENIX LIGHT SF LIMITED, in its own right and the right of BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC, SILVER ELMS CDO II LIMITED, C-BASS CBO XVII LTD., C-BASS CBO XIV LTD., and each of BLUE HERON FUNDING V. LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC, SILVER ELMS CDO II LIMITED, in their own right, C-BASS CBO XVII LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., KLEROS PREFERRED FUNDING V PLC, BLUE HERON FUNDING IX LTD., BLUE HERON FUNDING VII LTD., SILVER ELMS CDO PLC,

*Plaintiffs-Appellants*,

*v.*

THE BANK OF NEW YORK MELLON, as Trustee,

*Defendant-Appellee.*\*

Appeal from the United States District Court
for the Southern District of New York
No. 14-cv-10104, Valerie Caproni, *Judge*.

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

PHOENIX LIGHT SF DAC, KLEROS PREFERRED FUNDING V PLC,

*Plaintiffs-Appellants*,

*v.*

THE BANK OF NEW YORK MELLON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of New York
No. 18-cv-1194, Valerie Caproni, *Judge.*

PHOENIX LIGHT SF LIMITED, in its own right and the right of BLUE
HERON FUNDING IX LTD., C-BASS CBO XIV LTD., C-BASS CBO XVII
LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC,
SILVER ELMS CDO II LIMITED, BLUE HERON FUNDING IX LTD., BLUE
HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON
FUNDING VII LTD.,

*Plaintiffs-Appellants*,

*v.*

DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE
BANK TRUST COMPANY AMERICAS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of New York
No. 14-cv-10103, John G. Koeltl, *Judge.*

Before:      SULLIVAN, MERRIAM, and KAHN, *Circuit Judges.*

2

Plaintiffs – issuers of collateralized debt obligations secured by certificates in residential-mortgage-backed securities trusts – appeal from three separate judgments dismissing actions brought against The Bank of New York Mellon, Deutsche Bank National Trust Company, and Deutsche Bank Trust Company Americas.  In each case, the district courts (Caproni and Koeltl, *JJ.*) assumed that Plaintiffs had Article III standing, but found that Plaintiffs were precluded from relitigating the issue of prudential standing due to a prior case Plaintiffs had brought against U.S. Bank National Association.  *See Phx. Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312, 2021 WL 4515256 (2d Cir. Oct. 4, 2021), *cert. denied*, 142 S. Ct. 1371 (2022).  In resolving an issue of first impression in this Circuit, we join the Ninth Circuit in concluding that the district courts permissibly bypassed the question of Article III standing to address issue preclusion, which offered a threshold, non-merits basis for dismissal.  *See Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2651 (2022).  We also conclude that the district courts' application of issue preclusion was correct.  We therefore **AFFIRM** the orders of the district courts in all three appeals.

AFFIRMED.

WILLIAM A. MAHER (Steven S. Fitzgerald, David H. Wollmuth, *on the brief*), Wollmuth Maher & Deutsch LLP, New York, NY, *for Plaintiffs-Appellants*.

CHARLES A. ROTHFELD, Mayer Brown LLP, Washington, DC (Christopher J. Houpt, Matthew D. Ingber, Mayer Brown LLP, New York, NY; Minh Nguyen-Dang, Mayer Brown LLP, Washington, DC, *on the brief*), *for Defendant-Appellee The Bank of New York Mellon*.

WILLIAM R. PETERSON, Morgan, Lewis & Bockius LLP, Houston, TX (Kevin J. Biron, Bryan P. Goff, Michael S. Kraut, Morgan, Lewis & Bockius LLP, New York, NY, *on the brief*), *for Defendants-Appellees Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas*.

3

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiffs – issuers of collateralized debt obligations ("CDOs") secured by certificates in residential-mortgage-backed securities ("RMBS") trusts – appeal from three separate judgments dismissing actions brought against The Bank of New York Mellon ("BNY Mellon") and Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas (together, "Deutsche Bank"), which served as either trustee or master servicer of the RMBS trusts. In each case, the district courts (Caproni and Koeltl, *JJ.*) assumed that Plaintiffs had Article III standing, but found that Plaintiffs were precluded from relitigating the issue of prudential standing due to a prior case Plaintiffs had brought against U.S. Bank National Association ("U.S. Bank"). *See Phx. Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312, 2021 WL 4515256 (2d Cir. Oct. 4, 2021), *cert. denied*, 142 S. Ct. 1371 (2022). In resolving an issue of first impression in this Circuit, we join the Ninth Circuit in concluding that the district courts permissibly bypassed the question of Article III standing to address issue preclusion, which offered a threshold, non-merits basis for dismissal. *See Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2651 (2022). We also conclude that the district

4

courts' application of issue preclusion was correct. We therefore **AFFIRM** the orders of the district courts in all three appeals.

## I. BACKGROUND

Plaintiffs are issuers of CDOs, meaning that they issued notes secured by a portfolio of assets, including certificates in RMBS trusts. In 2014, seeking to recover losses from their RMBS investments in the wake of the 2008 collapse of the housing market, Plaintiffs brought various suits against RMBS trustees, including U.S. Bank, BNY Mellon, and Deutsche Bank (the "U.S. Bank Action," the "BNY Mellon 2014 Action," and the "Deutsche Bank Action," respectively). However, in 2015, the district court in the U.S. Bank Action granted the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Phx. Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-cv-10116 (KBF), 2015 WL 2359358, at *1 (S.D.N.Y. May 18, 2015). In particular, the district court found that Plaintiffs lacked standing because, when they issued their CDO notes, they simultaneously conveyed all right, title, and interest in the RMBS certificates – including the full power to file actions regarding rights under the RMBS certificates – to other entities (the "CDO Trustees"). *See id.* at *2–4.

Following that decision, the CDO Trustees assigned litigation rights associated with the RMBS certificates back to Plaintiffs across all five lawsuits. Plaintiffs amended their complaint accordingly in the U.S. Bank Action, and in response, U.S. Bank included in its answer the affirmative defense of champerty, signaling that it intended to assert that Plaintiffs *still* lacked standing because the CDO Trustees' assignment of litigation rights back to Plaintiffs was invalid under New York law. *See* N.Y. Jud. Law § 489 ("No person or co-partnership . . . and no corporation or association . . . shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon[.]").

In 2020, after discovery was complete, the district court in the U.S. Bank Action granted summary judgment in favor of U.S. Bank, agreeing that the CDO Trustees' assignments were champertous and, as a result, finding that Plaintiffs lacked *both* Article III *and* prudential standing – i.e., finding that Plaintiffs *neither* (1) suffered a concrete and particularized injury in fact, fairly traceable to the challenged actions of U.S. Bank and likely redressable by a favorable judicial

decision, *nor* (2) asserted their own legal rights and interests. *See Phx. Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 277–87 (S.D.N.Y. 2020), *reconsideration denied*, No. 14-cv-10116 (VSB), 2020 WL 4699043 (S.D.N.Y. Aug. 12, 2020). A year later, this Court affirmed on the ground that the assignments were champertous and that Plaintiffs thus lacked prudential standing. *See Phx. Light*, 2021 WL 4515256, at *1–2. In so doing, we assumed but did not decide the issue of Article III standing. *See id.* at *1.

After we affirmed, the district court in the BNY Mellon 2014 Action – which had been at the summary-judgment stage before being stayed pending the appeal in the U.S. Bank Action – ordered the parties to brief the effect of our decision. That same order also directed the parties to brief the effect on a related action concerning BNY Mellon's role as a master servicer of an RMBS trust (the "BNY Mellon 2018 Action"), which had been severed from the BNY Mellon 2014 Action and had been in discovery at the time of the stay. After the briefing, the district court issued an order dismissing both actions, which "assume[d]" that Plaintiffs had Article III standing, *Phx. Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104 (VEC), 2022 WL 92213, at *2 n.6 (S.D.N.Y. Jan. 7, 2022), but found that Plaintiffs were precluded from relitigating the issue of prudential standing by the U.S. Bank

7

Action, *see id.* at *3–6.  In the alternative, the district court found that Plaintiffs lacked prudential standing "under a fresh analysis."  *Id.* at *5 n.15.  About a month later, the district court in the Deutsche Bank Action, which like the BNY Mellon 2014 Action was at the summary-judgment stage, arrived at the exact same conclusions.  *See Phx. Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540, 559–63 & nn.15–16 (S.D.N.Y. 2022).[1]

Plaintiffs timely appealed.

## II.  DISCUSSION

We review a district court's grant of summary judgment de novo.  *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013).  We also "generally review de novo a district court's ruling on" issue preclusion, also known as collateral estoppel, because the doctrine "frequently turn[s] on pure questions of law, or on the application of law to undisputed facts."  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005); *see also United States v. U.S. Currency in*

---

[1] In its summary-judgment order dismissing the Deutsche Bank Action for lack of prudential standing based on issue preclusion, the district court also reached issues pertaining to the underlying substance of Plaintiffs' claims – as the district court in the BNY Mellon 2014 Action previously had in a summary-judgment order in 2017.  On appeal, Plaintiffs contend that the district courts erred in granting summary judgment to Deutsche Bank and BNY Mellon on some of these substantive issues as well, but because we affirm the dismissals based on issue preclusion and prudential standing, we need not reach those questions.

*the Amount of $119,984.00, More or Less*, 304 F.3d 165, 171–72 (2d Cir. 2002). Applying the de-novo review standard, we conclude that the district courts appropriately dismissed all three actions on appeal.

## A. Bypassing Jurisdiction

As an initial matter, we reject Plaintiffs' contention that the district courts were obliged to address whether Plaintiffs had Article III standing before determining that Plaintiffs lacked prudential standing. The parties strenuously debate whether past cases holding that courts may assume Article III standing in order to dismiss on prudential-standing grounds, such as *Kowalski v. Tesmer*, 543 U.S. 125 (2004), and *Hillside Metro Associates v. JPMorgan Chase Bank*, 747 F.3d 44 (2d Cir. 2014), are still good law in light of more recent cases, such as *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), and *SM Kids, LLC v. Google LLC*, 963 F.3d 206 (2d Cir. 2020). But we need not answer that question today: even if we assume that the prudential-standing question at issue here involved a merits determination that should not have been *substantively* considered before Article III standing, the district courts were (and we are) still permitted to bypass Article III standing to consider whether Plaintiffs were *collaterally estopped* from relitigating the issue of prudential standing.

Despite the ordinary rule that courts must address questions pertaining to constitutional jurisdiction first, *see, e.g.*, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998), the Supreme Court has supplied courts with "leeway" to dismiss actions based on non-jurisdictional, non-merits grounds, particularly where the constitutional-jurisdiction question is "difficult to determine" and dismissing on the threshold issue is "the less burdensome course." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431, 436 (2007); *see also In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155–59 (2d Cir. 2015). For example, in *Sinochem*, the Supreme Court held that a district court had discretion to dismiss under the doctrine of forum non conveniens before disposing of any other threshold challenges, including to personal or subject-matter jurisdiction. *See* 549 U.S. at 430–36; *see also, e.g.*, *Ellis v. Dyson*, 421 U.S. 426, 433–34 (1975) (holding that dismissals based on abstention under *Younger v. Harris*, 401 U.S. 37 (1971), may be resolved before addressing jurisdiction); *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (similarly holding that dismissals under *Totten v. United States*, 92 U.S. 105 (1876), may be resolved before addressing jurisdiction).

Joining the Ninth Circuit, we hold that issue preclusion, or collateral estoppel, is another such non-merits threshold ground that is suitable for

10

resolution before addressing a difficult or novel question of constitutional jurisdiction. *See Snoqualmie*, 8 F.4th at 861–63.[2] As the Ninth Circuit explained, issue preclusion is a non-merits inquiry because it "does not require the court to assume substantive law-declaring power." *Id.* at 862; *see also Sinochem*, 549 U.S. at 433 (characterizing this as "[t]he critical point"); *United States ex rel. Hanks v. United States*, 961 F.3d 131, 137 (2d Cir. 2020) (same). Rather, "[j]ust as a forum[-]non[-]conveniens dismissal is a determination that the merits should be adjudicated by a different court, an issue[-]preclusion dismissal is a determination that the merits (of at least one issue) have already been adjudicated by a different court." *Snoqualmie*, 8 F.4th at 862 (emphasis omitted). In other words, because "jurisdiction is vital only if the court proposes to issue a judgment on the merits," *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006), and an issue-preclusion dismissal is not a judgment on the merits, courts are permitted to dismiss on the basis of issue preclusion without reaching harder Article III standing questions.

---

[2] Other courts have already so held for the related doctrine of claim preclusion. *See Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524–25 (5th Cir. 2008) (recognizing that claim preclusion could be considered before the jurisdictional issue of mootness, but declining to do so because the facts did not present "a textbook case for immediate res judicata dismissal" (internal quotation marks omitted and alterations adopted)); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 277–78 (3d Cir. 2016) (holding that a court can assume subject-matter jurisdiction to dismiss on claim-preclusion grounds, because doing so does "not technically [produce] a judgment on the merits"); *cf. also Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (noting that courts may dispose of cases on res judicata grounds "without reaching the merits of the controversy").

And here, the district courts were faced with a thorny Article III standing question. We appreciate that "[i]n the mine run of cases, jurisdiction will involve no arduous inquiry." *Sinochem*, 549 U.S. at 436 (internal quotation marks omitted). But this is not a mine-run case. To the contrary, the constitutional-standing inquiry presents a hotly debated question. *Compare, e.g.*, Plaintiffs Br. at 26–31 (No. 22-239) (asserting that Article III jurisdiction is satisfied), *with* BNY Mellon Br. at 41–46 (No. 22-239) (asserting Article III jurisdiction is not satisfied), *and* Deutsche Bank Br. at 35–42 (No. 22-503) (same). As a result, we conclude that the district courts were permitted to dismiss on the basis of issue preclusion without assessing the question of constitutional jurisdiction – and that we are permitted to affirm on that ground, as we do now. *See Hoffman*, 837 F.3d at 278 n.33.

## B. Issue Preclusion

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding," *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012), including issues of standing, *see Mrazek v. Suffolk Cnty. Bd. of Elections*, 630 F.2d 890, 896 n.10 (2d Cir. 1980); *see also Morabito v. New York*, 803 F. App'x 463, 467 (2d Cir. 2020); *Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir.

12

2012). The preclusive effect of a judgment rendered by a federal court sitting in diversity – as was the district court in the U.S. Bank Action – is determined by the law of the state in which the rendering court sat – here, New York. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (internal quotation marks omitted); *see also In re Howard v. Stature Elec., Inc.*, 20 N.Y.3d 522, 525 (2013).

Applying this framework, we agree with the district courts that the prior determination of prudential standing in the U.S. Bank Action satisfied the prerequisites for issue preclusion. More specifically, the district courts correctly determined that the champerty-based prudential-standing issue in the BNY Mellon 2014, BNY Mellon 2018, and Deutsche Bank Actions was decisive and identical to the one decided in the U.S. Bank Action, because it was undisputed below and on appeal that materially identical transactions with the CDO Trustees were at issue in all the actions. Additionally, we cannot say that the district courts

13

erred in determining that Plaintiffs had a full and fair opportunity to litigate the champerty-based prudential-standing issue in the U.S. Bank Action. Although a couple of the Plaintiffs did not participate in the U.S. Bank Action, the district courts found that the absent parties were sufficiently in privity with parties who did participate, *see Buechel v. Bain*, 97 N.Y.2d 295, 304–05 (2001) (describing New York's privity standard in issue-preclusion context) – a finding that Plaintiffs do not challenge on appeal, *see Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the [appellate] briefs are considered [forfeited] and normally will not be addressed on appeal.").

Plaintiffs' arguments to the contrary are unavailing. *First*, in all three appeals, Plaintiffs assert that the prudential-standing question decided in the U.S. Bank Action was a pure legal question and thus could not have issue-preclusive effect under New York law. *See, e.g., Plymouth Venture*, 988 F.3d at 642; *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (1997) (holding that because the plaintiff's arguments concerned "a pure question of law," "the doctrine of collateral estoppel does not preclude [the plaintiff] from litigating that issue again"). But, in fact, the champerty-based prudential-standing determination in the U.S. Bank Action was *not* a purely legal one. Under New York law, "the

14

purpose behind the plaintiff's acquisition of rights is the critical issue in assessing whether such acquisition is champertous," *Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 166–67 (2016) (internal quotation marks omitted and alterations adopted), and "the question of intent and purpose of the purchaser or assignee of a claim is usually a factual one," *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 738 (2000) (internal quotation marks omitted); *see also Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 195, 200 (2009). Applying this case law, the district court in the U.S. Bank Action rested its champerty-based prudential-standing determination on factual findings regarding the intent and purpose behind the CDO Trustees' assignments, *see Phx. Light*, 612 F. Supp. 3d at 281–86, as did we when affirming, *see Phx. Light*, 2021 WL 4515256, at *1–2 ("Based on the factual findings of the [d]istrict [c]ourt, it is clear that the assignments made were indeed champertous[.]"). As such, New York's pure-legal-question exception to issue preclusion has no application here. *See Am. Home Assurance*, 90 N.Y.2d at 440 n.1 (noting that "mixed question[s] of law and fact" are subject to issue preclusion).

*Second*, Plaintiffs assert that fairness and other equitable considerations should have barred the application of issue preclusion in the BNY Mellon 2018

15

Action and the Deutsche Bank Action. We disagree. For starters, Plaintiffs forfeited these arguments in the BNY Mellon 2018 Action by failing to raise them to the district court, and we decline to exercise our discretion to consider them now for the first time on appeal. *See Doe v. Trump Corp.*, 6 F.4th 400, 409–11 (2d Cir. 2021).

As to the Deutsche Bank Action, we recognize that under New York law, "the question of fairness . . . in the application of the doctrine [of issue preclusion] must be the crowning consideration." *Read v. Sacco*, 375 N.Y.S.2d 371, 375 (2d Dep't 1975). Indeed, as an extension of the requirement that the party to be precluded from relitigating had a full and fair opportunity to litigate the issue in the prior action, "each case must be examined to determine whether, under all the circumstances, the party said to be estopped was not unfairly or prejudicially treated in the litigation in which the judgment sought to be enforced was rendered." *Id.* But instead of offering ways in which Plaintiffs were *unfairly treated in the U.S. Bank Action*, Plaintiffs only suggest that it is generally *unfair to invalidate their assignments*, as they had pursued those assignments based on the reasonable assumption that ratification under Federal Rule of Civil Procedure 17(a)(3) was unavailable. To the extent this is even a cognizable complaint within New York's

issue-preclusion rubric, Plaintiffs' strategic miscalculations do not generate unfairness; even prior to *Fund Liquidation Holdings LLC v. Bank of America Corp.*, attempting ratification would not have been directly contrary to controlling precedent in this Circuit. *See* 991 F.3d 370, 387 (2d Cir. 2021) (recognizing the issue as "an open question"); *FDIC v. Citibank N.A.*, No. 15-cv-6574 (ALC), 2017 U.S. Dist. LEXIS 108104, at *8–9 (S.D.N.Y. July 10, 2017) (allowing parties to ratify to cure standing defects prior to *Fund Liquidation*).

Relatedly, Plaintiffs suggest that Deutsche Bank should have been prevented from invoking the equitable doctrine of issue preclusion because it had unclean hands. *See PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) ("New York courts have long applied the maxim that one 'who comes to equity must come with clean hands.'" (quoting *Amarant v. D'Antonio*, 602 N.Y.S.2d 837, 838 (1st Dep't 1993))). Granted, in its capacity as a CDO Trustee, Deutsche Bank Trust Company Americas was a party to one of the champertous assignments. This, however, does not render Deutsche Bank's hands unclean – or the application of issue preclusion unfair – as it is undisputed that *Plaintiffs* were the ones who orchestrated the assignments. *See id.* (explaining that "one who has

17

acted fraudulently, or who by deceit or any unfair means has gained an advantage," cannot invoke preclusion (internal quotation marks omitted)).

*Third*, and finally, Plaintiffs assert that they should not have been precluded from relitigating prudential standing in the BNY Mellon 2014 Action because in that action BNY Mellon had neglected to plead, and thus waived, champerty as an affirmative defense. *See* J. App'x at 707–11 (No. 22-239) (district court recognizing the waiver). However, regardless of what BNY Mellon pleaded, the district court was permitted to consider the affirmative defense of issue preclusion – even issue preclusion of champerty-based prudential standing – in accordance with the "strong public policy in economizing the use of judicial resources by avoiding relitigation." *Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir. 2003) (internal quotation marks omitted) (holding that a court may, in its discretion, permit an issue-preclusion defense to be raised for the first time on summary judgment); *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) ("Although the district court raised the issue of collateral estoppel sua sponte, this decision does not require reversal.").

The New York case law Plaintiffs cite is not to the contrary. Although New York courts have commented that "the dismissal of a complaint as against one

18

party need not be given res judicata effect as against another . . . when the dismissal was based upon a defense that was personal to that party," *Raab v. Kaleida Health*, 875 N.Y.S.2d 411, 412 (4th Dep't 2009), the champerty-based prudential-standing defense was not *personal* to U.S. Bank. Rather, putting aside the pleading defect, the defense was equally available to BNY Mellon, given that Plaintiffs had executed virtually identical agreements with the relevant CDO Trustees in both the BNY Mellon 2014 and U.S. Bank Actions. Thus, the fact that BNY Mellon did not assert the champerty defense in its answer did not prevent the district court from exercising its discretion to consider the defense as part of its issue-preclusion and prudential-standing analysis, particularly since Plaintiffs had ample notice of BNY Mellon's issue-preclusion arguments and an opportunity to respond. *See Curry*, 316 F.3d at 331.[3]

In short, we fully agree with the district courts that Plaintiffs were not entitled to a second bite at the prudential-standing apple after the U.S. Bank Action. The district courts therefore did not err in taking this straightforward, if not "textbook," path to dismissal. *Sinochem*, 549 U.S. at 435.

---

[3] Equally meritless is Plaintiffs' related contention that the issue-preclusion dismissal in the BNY Mellon 2018 Action was improper because no formal summary-judgment motion was filed. The district court did not need to abide by the strictures of Federal Rule of Civil Procedure 56 to dismiss for issue preclusion. *See Pfrommer*, 148 F.3d at 80; *Hoffman*, 837 F.3d at 280.

19

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgments of the district courts.